*Opposed*—None.

67 A.3d 601

TOWN OF KEARNY, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. LOUIS F. BRANDT, AIA, MICHAEL KUYBIDA, AIA, ROBERT STREBI, R.A., BRANDT–KUYBIDA ARCHITECTS, DEFENDANTS–RESPONDENTS AND CROSS–APPELLANTS, AND JOHN N. HARRISON, P.E., HARRISON–HAMNETT, P.C., WILLIAM J. ST. PIERRE, P.E., SOILS ENGINEERING SERVICES, INC., DEFENDANTS.

Argued November 27, 2012—Decided June 20, 2013.

80

*Norma Garcia–Anstatt* argued the cause for appellant and cross-respondent (*Castano Quigley*, attorneys).

*Katherine Herr Solomon,* a member of the New York bar, argued the cause for respondents and cross-appellants (*Mauro Lilling Naparty* and *Cimino & Filippone*, attorneys; *Ms. Solomon* and *Matthew W. Naparty*, of counsel and on the briefs).

Justice PATTERSON delivered the opinion of the Court.

This construction dispute requires the Court to consider two issues: 1) when a building can be considered substantially complete for purposes of calculating the ten-year period of the statute of repose, *N.J.S.A.* 2A:14–1.1(a), and 2) whether the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.2, and the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–2, authorize allocation of fault at trial to defendants who have obtained dismissals pursuant to the statute of repose, *N.J.S.A.* 2A:14–1.1(a).

Following structural failures in its public safety facility, plaintiff Town of Kearny (Town) sued the project's architectural firm, Brandt–Kuybida Architects (Brandt–Kuybida), and three of its individual architects, alleging that Brandt–Kuybida was liable for defects in the facility that rendered it unusable. The Town and Brandt–Kuybida filed claims against the project's soil engineering firm, Soils Engineering Services, Inc. (SESI), and one of its individual engineers, and structural engineering firm, Harrison–Hamnett, P.C. (Harrison–Hamnett), and its principal. The trial court granted summary judgment motions filed by SESI and Harrison–Hamnett on the ground that the Town's complaint was filed more than ten years after the engineers completed their work on the construction project, ruling that the claims against these defendants were barred by the statute of repose and the statute of limitations. The trial court, however, denied a similar motion filed by the defendant architect, holding that the ten-year

periods prescribed by the statutes of repose and limitations were triggered by the issuance of the first Temporary Certificate of Occupancy, and, accordingly, the Town's claims against the architect were timely filed. The trial court also denied Brandt–Kuybida's application for an apportionment of fault at trial to SESI and Harrison–Hamnett, pursuant to the Comparative Negligence Act and the Joint Tortfeasors Contribution Law.

The Town appealed. The Appellate Division affirmed the trial court's application of the statutes of repose and limitations to Brandt–Kuybida but reversed the trial court's denial of the architect's application for an apportionment of fault to the dismissed codefendants.

We affirm. We hold that the trial court properly denied Brandt–Kuybida's motion for summary judgment on the statute of repose issue. We concur with the trial court's finding that the ten-year period prescribed in *N.J.S.A.* 2A:14–1.1(a) commenced when the first Temporary Certificate of Occupancy was issued for the Town's public safety facility. We further hold that, when the claims against a defendant are dismissed on statute of repose grounds, fault may be apportioned to the dismissed defendant under the Comparative Negligence Act and the Joint Tortfeasors Contribution Law.

I.

The South Kearny Improvement Projects Corporation (SKIP) was charged by the Town with the responsibility to oversee the design and construction of a new public safety facility, including police and fire stations. In October 1989, Brandt–Kuybida submitted a proposal to SKIP to design and plan the new facility. SKIP selected Brandt–Kuybida to perform the work. A principal of the firm, Louis Brandt, was initially designated as the lead architect. The Town and Brandt–Kuybida executed a contract on April 9, 1990. After Brandt–Kuybida dissolved in 1994, Michael Kuybida became the primary architect for the project.

Other professionals were hired for the Town's project. SKIP directly retained SESI to conduct a soil investigation. SESI completed and reported on its soil investigation in July 1990, and had no further involvement with the facility. Brandt–Kuybida hired Harrison–Hamnett to serve as the structural engineer, with responsibility to design the facility's foundations, piles, roof structure and wall reinforcement. Harrison–Hamnett completed its work on October 30, 1995.

SKIP chose Belcor Construction (Belcor) to build the facility in accordance with Brandt–Kuybida's design, and, on July 11, 1994, SKIP and Belcor entered into a construction contract. Among other provisions, the construction contract required Belcor to achieve substantial completion of the project within 360 days of the issuance of a Notice to Proceed. That notice was issued on September 12, 1994. The contract between SKIP and Belcor defined substantial completion to be the date upon which the project architect, Brandt–Kuybida, certified that the facility is "sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use."

Construction of the facility began in the fall of 1994. On November 15, 1995, Belcor signed a document entitled "Certificate of Substantial Completion" (Certificate). On November 24, 1995, Brandt–Kuybida and SKIP signed that same document. In language similar to that of the July 11, 1994 contract, the Certificate defined the date of substantial completion as "the Date certified by the Architect when construction is sufficiently complete, in accordance with the Contract Documents, so the Owner can occupy or utilize the Work or designated portion thereof for the use for which it is intended, as expressed in the Contract Documents." The signatories to the Certificate, however, failed to complete it. For reasons that the record does not disclose, the "date of issuance" and the "date of completion" of the project were left blank on the form.

According to a December 7, 1995 memorandum from Brandt–Kuybida, a November 28, 1995 inspection revealed that open items had to be completed and that, while municipal construction, fire and electrical approval had been obtained, approval for the facility's plumbing was still pending. A December 4, 1995 punch list identified eleven outstanding items requiring additional work. On January 18, 1996, Brandt–Kuybida wrote to Belcor confirming the continued existence of open items and a pending plumbing inspection of the facility's showers. It was not until April 5, 1996, that the Kearny Police Department requested permission to occupy its portion of the building. On April 9, 1996, the Town's Construction Official issued the first Temporary Certificate of Occupancy, limited to the police section of the building and subject to completion of the items in a March 28, 1996 punch list. On May 23, 1996, the Construction Official issued the second Temporary Certificate of Occupancy, permitting the Kearny Fire Department to use its section of the building.

Structural defects in the facility surfaced shortly after the Kearny Police Department took occupancy. The building settled differentially, causing gaps between the ceiling and a wall, as well as leaks, buckled tiles and cracks in the walls. The Kearny Police Department reported leaks in various parts of the building and doors that could not close because they did not fit in their frames. Although the Town continued to use the facility, there were further complaints about structural flaws in the building. In 2003, the Town's Construction Official received an emergency call that the ceiling in the police dispatch area of the building was about to collapse. By 2007, ceilings in the facility had fallen, pipes had separated and pulled, and glass had broken, all of which were attributed to uneven settlement. The Town never issued a final certificate of occupancy. The Town's Construction Official ordered all occupants to evacuate the building on February 8, 2007. The building has been vacant and unused since that date.

Belcor initiated arbitration proceedings against the Town because the Town withheld final payment under the contract. Bel-

cor and the Town resolved their dispute by Stipulation of Settlement dated October 12, 1999. Both the Stipulation of Settlement and the related Town of Kearny Resolution 1999(R)–338 identified the date of substantial completion of the facility as February 1, 1996.

## II.

On April 7, 2006, the Town filed an action in the Law Division, asserting negligence and breach of contract claims against Brandt–Kuybida and two of its principals, Louis Brandt and Michael Kuybida, and another architect, Robert Strebi (the Brandt–Kuybida defendants); negligence claims against Harrison–Hamnett and its principal, John N. Harrison (the Harrison–Hamnett defendants); and negligence and breach of contract claims against SESI and one of its engineers, William St. Pierre (the SESI defendants). The Brandt–Kuybida defendants pled an affirmative defense based upon their right to seek apportionment of fault to all other parties who contributed to the incident. They also asserted a cross-claim against their codefendants, premised upon common-law indemnification and contribution pursuant to the Comparative Negligence Act and the Joint Tortfeasors Contribution Law.

The Brandt–Kuybida defendants filed a motion for summary judgment. They asserted, among other theories, that the statute of repose, *N.J.S.A.* 2A:14–1.1(a), barred the Town's claims.[1] The

---

[1] The Brandt–Kuybida defendants also asserted a defense based upon the ten-year statute of limitations that governs construction claims asserted by public entities, *N.J.S.A.* 2A:14–1.2. In this case, the parties stipulated that the statute of repose and statute of limitations were coextensive, and that the ten-year period for each commenced on the date of substantial completion. The Town did not assert that the discovery rule tolled the commencement of the statute of limitations in this case. *See Rosenberg v. Town of N. Bergen*, 61 *N.J.* 190, 195–98, 293 *A.2d* 662 (1972) (applying discovery rule to toll limitations period). The trial court agreed that the date upon which the ten-year period of the statute of repose and the ten-year limitations period began for purposes of *N.J.S.A.* 2A:14–1.2 were the same. The Appellate Division affirmed without further discussion.

trial court denied the Brandt–Kuybida defendants' summary judgment motion, concluding that the ten-year period for purposes of the statute of repose began on the date of substantial completion of the project. The trial court rejected the Brandt–Kuybida defendants' contention that the date of substantial completion was November 24, 1995, when defendant Michael Kuybida signed the Certificate of Substantial Completion, or, in the alternative, February 1, 1996, the date of substantial completion identified in the October 12, 1999 Stipulation of Settlement between the Town and Belcor and the Town of Kearny Resolution 1999(R)–338 of the same date. Instead, the trial court identified the critical date as April 9, 1996, when the first Temporary Certificate of Occupancy was issued. Accordingly, the trial court held that the ten-year period for filing suit under the statute of repose expired on April 9, 2006. Because the Town had filed its complaint two days before that deadline, on April 7, 2006, the trial court denied the Brandt–Kuybida defendants' summary judgment motion.

The trial court, however, granted summary judgment motions filed by the Harrison–Hamnett defendants and the SESI defendants. It held that the ten-year period set forth in the statute of repose commenced for the SESI defendants on the date that their involvement in the project ended, July 31, 1990, and that the statutory period commenced for the Harrison–Hamnett defendants on the date that their role in the project concluded, October 30, 1995. Consequently, the trial court held that the actions against the SESI and Harrison–Hamnett defendants were barred by both the statute of repose, *N.J.S.A.* 2A:14–1.1(a), and the

---

In this procedural posture, we do not separately address the statute of limitations issue, and we do not consider the potential impact that the discovery rule may have upon the statute of limitations in a different setting. *See, e.g., Russo Farms, Inc. v. Vineland Bd. of Educ.,* 144 *N.J.* 84, 115, 675 *A.2d* 1077 (1996) (recognizing discovery rule could apply to six-year statute of limitations for construction defects, but declining to apply to facts of case); *Trinity Church v. Lawson–Bell,* 394 *N.J.Super.* 159, 171–72, 925 *A.2d* 720 (App.Div.2007) (finding plaintiffs did not establish equitable tolling claim to bar enforcement of six-year statute of limitations for construction defects).

statute of limitations, *N.J.S.A.* 2A:14–1.2(a). In the wake of the trial court's decision, the Brandt–Kuybida defendants were the only remaining defendants in the case.

The Brandt–Kuybida defendants filed a motion for leave to appeal the trial court's order denying summary judgment. The Appellate Division granted the motion and summarily remanded the case to the trial court for reconsideration in light of this Court's decision in *Daidone v. Buterick Bulkheading,* 191 *N.J.* 557, 924 *A.*2d 1193 (2007). On remand, the trial court analyzed *Daidone* but again denied the Brandt–Kuybida defendants' summary judgment motion. It then granted the Town's motion to strike several of the Brandt–Kuybida defendants' affirmative defenses, including the affirmative defense asserting their right to seek apportionment of fault to other parties. The trial court held that by virtue of the dismissal of the Town's claims against the Harrison–Hamnett defendants and the SESI defendants, those defendants were no longer parties, and Brandt–Kuybida was not entitled to an apportionment of fault against them.

The case was tried before a jury for six days in October 2008. The trial court rejected the Brandt–Kuybida defendants' argument that the date of substantial completion should be determined by the jury, and denied their motion to dismiss the Town's claims on statute of repose grounds at the close of the Town's case. In accordance with the trial court's decision striking the Brandt–Kuybida defendants' apportionment defense, the jury considered only the fault of those defendants, not that of the codefendants previously dismissed on statute of repose grounds.[2] The jury found the Brandt–Kuybida defendants negligent, determined that their negligence was the proximate cause of the Town's losses and awarded $800,000 in damages to the Town.

The Brandt–Kuybida defendants appealed. Analyzing the Comparative Negligence Act, the Joint Tortfeasor Contribution Law

---

[2] Although the trial court transcript reflects that the jury received a verdict sheet, the verdict sheet is not part of the record.

and the statute of repose, the Appellate Division reversed the trial court's determination on the issue of apportionment. The panel held that the Legislature's objective in promoting fair apportionment of liability under these statutes would be best served if the jury were permitted to allocate fault to the SESI and Harrison–Hamnett defendants.[3] The Appellate Division thus remanded for a new trial on liability. The panel, however, rejected the Brandt–Kuybida defendants' argument with respect to the date of the substantial completion of the facility. The panel agreed with the trial court that substantial completion occurred for purposes of the statutes on April 9, 1996, when the first Temporary Certificate of Occupancy was issued. The panel accordingly held that the Town's cause of action against the Brandt–Kuybida defendants was timely.

We granted the Town's petition for certification and the Brandt–Kuybida defendants' cross-petition for certification. 209 *N.J.* 98, 35 *A.*3d 681 (2012).

### III.

The parties dispute whether the trial court should have granted the Brandt–Kuybida defendants' motion for summary judgment on the statute of repose. The Brandt–Kuybida defendants primarily rely upon the Certificate of Substantial Completion signed on November 15 and 24, 1995, contending that the latter date constitutes the operative date by which the construction was substantially complete. They contend that, if the Court does not accept November 24, 1995, as the date of substantial completion, it should instead find February 1, 1996, to be the critical date, given the Town's acknowledgement of that date in its Stipulation of Settlement with Belcor and the corresponding Town of Kearny Resolution 1999(R)–338. The Brandt–Kuybida defendants argue that in

---

[3] The Appellate Division affirmed the trial court's determination that fault could not be apportioned to the Town under the Comparative Negligence Act and the Joint Tortfeasors Contribution Law, and that issue is not before this Court.

either case, the ten-year period prescribed by the statute of repose expired before the Town filed its complaint on April 7, 2006.

The Town argues that the trial court properly ruled that the date of substantial completion was April 9, 1996, when the first Temporary Certificate of Occupancy was issued. Although the Town concedes that parties to a construction dispute may stipulate to a date of substantial completion, it contends that there was no such stipulation in this case. The Town asserts that because no agreed-upon date was included in the Certificate of Substantial Completion, that document lacked a material term and has no legal effect. The Town urges the Court to defer to the factual findings of the trial court regarding the actual date upon which work on the project had progressed to the point of substantial completion. It argues that the trial court correctly denied the Brandt–Kuybida defendants' motion for summary judgment, because the action was timely filed.

With respect to the issue of apportionment, the Town argues that the Appellate Division erred when it reversed the trial court's pretrial and trial orders and permitted the Brandt–Kuybida defendants to allocate fault to the SESI and Harrison–Hamnett defendants. The Town contends that, when the claims against an individual or entity are dismissed pursuant to the statute of repose, liability should not be apportioned to that individual or entity, because the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.2(a)(2), authorizes apportionment only to "the parties to a suit." The Town argues that the SESI and Harrison–Hamnett defendants are distinguishable from various categories of parties to whom fault may be apportioned under our law. Instead, the Town likens the dismissed defendants in this case to an employer protected from civil liability by the workers' compensation bar, to which fault may not be apportioned under the relevant statutes.

The Brandt–Kuybida defendants counter that allocation of fault to the SESI and Harrison–Hamnett defendants is consistent with the protective goals of the statute of repose because those defen-

dants would not be compelled to pay damages to the Town no matter what the outcome of a new liability trial. They argue, that by virtue of the trial court's ruling, they were effectively penalized by the Town's failure to file a timely action against the SESI and Harrison–Hamnett defendants. The Brandt–Kuybida defendants contend that the dismissed codefendants in this case are analogous to settling defendants that cannot be sued by virtue of statutory immunity, and defendants who are dismissed because of a defect in the plaintiff's complaint, but are nonetheless considered in the allocation of fault. They urge the Court to affirm the Appellate Division's order remanding the case for a new liability trial.

## IV.

The first issue before the Court is whether the trial court properly denied the Brandt–Kuybida defendants' motion for summary judgment and their motion to dismiss at the close of the Town's case at trial based upon the statute of repose. We review de novo the grant or denial of a motion for summary judgment. *Coyne v. State Dep't of Transp.*, 182 *N.J.* 481, 491, 867 *A.*2d 1159 (2005). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2(c). The judge must decide whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).[4]

---

[4] A motion for dismissal based on *Rule* 4:37–2(b) "requires essentially the same analysis" as a motion for summary judgment under *Rule* 4:46–2. *Shelcusky v. Garjulio*, 172 *N.J.* 185, 199, 797 *A.*2d 138 (2002).

■ To the extent that the trial court's ruling with respect to the statute of repose was premised upon factual findings, those findings are entitled to substantial deference on appellate review, and are not overturned if they are supported by "adequate, substantial, and credible evidence." *Pheasant Bridge Corp. v. Twp. of Warren,* 169 *N.J.* 282, 293, 777 *A.*2d 334 (2001), *cert. denied,* 535 *U.S.* 1077, 122 *S.Ct.* 1959, 152 *L.Ed.*2d 1020 (2002). The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

In 1967, "the Legislature enacted the statute [of repose] in response to the expanding application of the 'discovery rule' to new types of tort litigation, the abandonment of the 'completed and accepted rule' ... and the expansion of strict liability in tort for personal injuries caused by defects in new homes to builder/sellers of those homes." *Newark Beth Israel Med. Ctr. v. Gruzen & Partners,* 124 *N.J.* 357, 362, 590 *A.*2d 1171 (1991) (quoting *O'Connor v. Altus,* 67 *N.J.* 106, 117–19, 335 *A.*2d 545 (1975)). The statute was intended " 'to cut back on the potential of [design and construction professionals] to be subject to liability for life.' " *Ibid.* (quoting *Ramirez v. Amsted Indus., Inc.,* 86 *N.J.* 332, 356, 431 *A.*2d 811 (1981)). To that end, the statute of repose imposes a ten-year limit upon actions against parties responsible for the design, planning, supervision or construction of improvements to real property.[5] At the time relevant to this matter, the statute provided:

> No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribu-

---

[5] The statute of repose does not protect parties who are "in actual possession and control [of the improvement] as owner, tenant, or otherwise" at the time that the defective and unsafe condition causes the injury or damage at issue. *N.J.S.A.* 2A:14–1.1(a).

tion or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. [*N.J.S.A.* 2A:14–1.1(a).] [6]

▆▆▆ The statute of repose is construed broadly to serve its legislative objective "of providing a reasonable measure of protection against expanding liability for design and construction professionals." *Newark Beth Israel, supra,* 124 *N.J.* at 363, 590 *A.*2d 1171; *accord Rosenberg, supra,* 61 *N.J.* at 198, 293 *A.*2d 662. It is " 'unlike the typical statute of limitations [because t]he time within which suit may be brought under [the statute of repose] is entirely unrelated to the accrual of any cause of action.' " *Daidone, supra,* 191 *N.J.* at 564, 924 *A.*2d 1193 (alteration in original) (quoting *Rosenberg, supra,* 61 *N.J.* at 199, 293 *A.*2d 662). "[T]he discovery rule does not extend the ten-year statute of repose, because that statute was specifically passed to protect architects and other construction professionals from" indefinite liability that might otherwise be imposed by application of the discovery rule. *Trinity Church, supra,* 394 *N.J.Super.* at 176, 925 *A.*2d 720 (citing *Russo Farms, supra,* 144 *N.J.* at 116, 675 *A.*2d 1077). Thus, the date upon which the Town's cause of action accrued for purposes of the discovery rule is irrelevant to the issue before us.

▆▆▆ Our case law distinguishes between defendant contractors who are hired to perform limited services and defendants with supervisory responsibilities that span the entire project, in determining the date upon which the ten-year period begins for purposes of *N.J.S.A.* 2A:14–1.1(a). For the former, the ten-year period begins to run at the conclusion of the contractor's specific task. As this Court held in *Daidone, supra,* 191 *N.J.* at 568, 924 *A.*2d 1193, "if a plaintiff wishes to impose liability on an individual design professional or a sub-contractor, he or she will have to track when those design or construction services were completed

---

[6] The statute was amended in May 2001, *L.* 2001, *c.* 76, § 1, but the changes as a result of that amendment are irrelevant here.

and must file an action within ten years of that date." As the Appellate Division noted in *Port Imperial Condominium Association, Inc. v. K. Hovnanian Port Imperial Urban Renewal, Inc.*, 419 *N.J.Super.* 459, 470, 17 *A.*3d 283 (App.Div.2011), "unlike a claim against a general contractor whose work continued throughout the project up until the time of occupancy, a claim against a subcontractor who performed limited services with no further involvement with the construction is barred after ten years following the completion of that subcontractor's discrete task."

For professionals such as the Brandt–Kuybida defendants, whose responsibilities for the Kearny public safety facility continued throughout its design and construction, the ten-year period set forth in *N.J.S.A.* 2A:14–1.1(a) commences on the date of the project's substantial completion. In *Russo Farms, supra,* 144 *N.J.* at 116–17, 675 *A.*2d 1077, this Court reversed a panel that ruled that the " 'performance or furnishing' of services and construction" was not complete, and therefore did not trigger the commencement of *N.J.S.A.* 2A:14–1.1(a)'s ten-year period until "the final items on the punch list were completed." Citing the Legislature's interest in fairness and certainty, the Court rejected defining substantial completion as the date on which all outstanding construction issues are addressed:

> [I]f liability were to be measured from the date the last retainage is released and all disputed and punch list items are completed, a contractor's exposure to suit might be prolonged unreasonably. Disputes over workmanship and compensation for services can continue for years.... [A] contractor would remain liable and the commencement of the statute of repose could be delayed indefinitely. Such a result is inconsistent with the statutory purpose to provide repose and allow contractors and architects to walk away from liability at a certain point in time; indeed, it would, all too often, provide "liability for life."
>
> [*Id.* at 117–18, 675 *A.*2d 1077.]

Deferring to the construction industry's standard practice of deeming a project complete, the Court held that "substantial completion" had occurred for statute of repose purposes "when the certificate of occupancy was issued and the architect certified to the owner that building was substantially completed." *Id.* at 117, 675 *A.*2d 1077. The Court accepted the certificate of occupancy as

an appropriate benchmark for substantial completion because "[a]t that point, the building is inhabitable, and only touch-up items and disputed items, the 'punch list,' remain." *Ibid.* This standard "set[s] a 'bright line' date on which the [ten-year statute of repose period] begins to run." *Trinity Church, supra,* 394 *N.J.Super.* at 176, 925 *A.2d* 720; *accord Daidone, supra,* 191 *N.J.* at 566, 924 *A.2d* 1193.

This Court's holdings in *Russo Farms* and *Daidone* support the determinations of the trial court and the Appellate Division in this case. The trial and appellate courts agreed that the ten-year period prescribed by the statute of repose commenced on April 9, 1996, when the first Temporary Certificate of Occupancy was issued for the facility. As the trial court noted, this certificate indicated that the building was sufficiently complete so that it could be occupied and used. We agree and hold that the issuance of that certificate triggered the running of the ten-year period for purposes of the statute of repose under *N.J.S.A.* 2A:14–1.1(a).

While this Court in *Russo Farms* acknowledged the importance of the date of substantial completion as certified by a project's lead architect, *see Russo Farms, supra,* 144 *N.J.* at 92–93, 117, 675 *A.2d* 1077, a stipulated date of substantial completion may also be relevant to a court's analysis of the statute of repose, *see Trinity Church, supra,* 394 *N.J.Super.* at 170, 925 *A.2d* 720 (concluding parties can stipulate via contract to substantial completion date). Here, however, we have no such benchmark. The critical term—the date of substantial completion—is missing from the Certificate of Substantial Completion signed on November 15 and 24, 1995, and the document bears no official date of execution. Moreover, as the trial court found, in November 1995, substantial work remained to be completed before the building could be used. Accordingly, the incomplete Certificate signed in November 1995 is irrelevant to the statute of repose in this case.

█ We also affirm the trial court's finding with respect to the significance of the Stipulation and the Town of Kearny Resolution 1999(R)–338 arising from the Town's settlement with Belcor. These documents, which identify the date of substantial completion as February 1, 1996, represent neither a contemporaneous agreement between the Town and the Brandt–Kuybida defendants with respect to the operative date, nor the architect's determination that the facility was substantially complete. The trial court's rejection of February 1, 1996, as the date of substantial completion, for purposes of the dispute between the Town and the Brandt–Kuybida defendants, was amply supported by the evidence.

We affirm the trial court's finding that the ten-year period of the statute of repose, *N.J.S.A.* 2A:14–1.1(a), commenced on April 9, 1996, when the first Temporary Certificate of Occupancy was issued. Accordingly, we hold that the Town's action was timely filed against the Brandt–Kuybida defendants. We affirm the Appellate Division's determination that the trial court properly denied the Brandt–Kuybida defendants' motion for summary judgment.

## V.

█ We review de novo the Appellate Division's decision reversing the trial court's ruling on the issue of whether the jury should consider the SESI and Harrison–Hamnett defendants' fault in its apportionment calculation. *See Murray v. Plainfield Rescue Squad,* 210 *N.J.* 581, 584, 46 *A.*3d 1262 (2012) (reviewing meaning of statute de novo); *Manalapan Realty, supra,* 140 *N.J.* at 378, 658 *A.*2d 1230 (reviewing legal decisions de novo).

█ The Comparative Negligence Act and the Joint Tortfeasors Contribution Law comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm. Under the Comparative Negligence Act, in negligence and strict liability actions in which "the

question of liability is in dispute," the trier of fact makes the following findings of fact:

(1) The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence or fault, that is, the full value of the injured party's damages.

(2) The extent, in the form of a percentage, of each party's negligence or fault. The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all the parties to a suit shall be 100%.

[*N.J.S.A.* 2A:15–5.2(a).]

In practice, the Comparative Negligence Act requires the factfinder to assign to each party on the verdict sheet a percentage of fault, with the percentages assigned to each party adding up to 100%. *N.J.S.A.* 2A:15–5.2(a)(2). With the factfinder's task complete, "[t]he judge shall mold the judgment from the findings of fact made by the trier of fact." *N.J.S.A.* 2A:15–5.2(d). In accordance with *N.J.S.A.* 2A:15–5.3(a), if a defendant's fault is assessed at sixty percent or more, the plaintiff may recover the full amount of the awarded damages from that defendant alone. If the factfinder apportions less than sixty percent of fault to that defendant, the plaintiff may recover from that defendant only the percentage of the damages assessed. *N.J.S.A.* 2A:15–5.3(c).

The Joint Tortfeasors Contribution Law plays a complementary role in the statutory scheme. Under that statute, a party that is liable for more than the percentage share of the damage award that is assessed by the factfinder may have contribution rights against other parties. *N.J.S.A.* 2A:53A–3. The statute "was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." *Holloway v. State*, 125 *N.J.* 386, 400–01, 593 *A.2d* 716 (1991). As this Court noted in *Erny v. Estate of Merola*, 171 *N.J.* 86, 99, 792 *A.2d* 1208 (2002), "[w]hen applied together, the [Comparative Negligence Act and Joint Tortfeasors Contribution Law] implement New Jersey's approach to fair apportionment of damages among plaintiffs and defendants, and among joint defendants."

 This case requires us to determine whether the terms "each party" and "all the parties to a suit," as used in the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.2(a)(2), encompass defendants who have been granted dismissals pursuant to the statute of repose, *N.J.S.A.* 2A:14–1.1(a). Established principles of statutory construction direct that we determine the Legislature's intent, considering first the statute's plain language. *Brodsky v. Grinnell Haulers, Inc.*, 181 *N.J.* 102, 109–10, 853 *A.*2d 940 (2004); *Nat'l Waste Recycling, Inc. v. Middlesex Cnty. Improvement Auth.*, 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997). The Court should also "be guided by the legislative objectives sought to be achieved by enacting the statute." *Wilson ex rel. Manzano v. City of Jersey City*, 209 *N.J.* 558, 572, 39 *A.*3d 177 (2012).

 When interpreting multiple statutes governing the same subject, the Court should attempt to harmonize their provisions. *Saint Peter's Univ. Hosp. v. Lacy*, 185 *N.J.* 1, 14–15, 878 *A.*2d 829 (2005) (" 'Statutes that deal with the same matter or subject should be read *in pari materia* and construed together as a "unitary and harmonious whole." ' " (quoting *In re Adoption of a Child by W.P. & M.P.*, 163 *N.J.* 158, 182–83, 748 *A.*2d 515 (2000) (Poritz, C.J., dissenting))). Here, our task is to harmonize the text and intent of the Comparative Negligence Act and the Joint Tortfeasors Contribution Law with the statute of repose. *See Brodsky, supra,* 181 *N.J.* at 110–11, 853 *A.*2d 940 (analyzing several provisions of Comparative Negligence Act to determine whether defendant dismissed because of bankruptcy is "party" to the suit); *Burt v. W. Jersey Health Sys.*, 339 *N.J.Super.* 296, 303–05, 771 *A.*2d 683 (App.Div.2001) (harmonizing Comparative Negligence Act, Joint Tortfeasors Contribution Law, and Affidavit of Merit statute, *N.J.S.A.* 2A:53A–27 to –29).

We previously have not determined whether the Comparative Negligence Act and the Joint Tortfeasors Contribution Law authorize allocation of fault to a defendant who obtains a dismissal by virtue of the statute of repose. This Court and the Appellate

Division, however, have analyzed these comparative fault statutes in cases in which the claims against some defendants have been dismissed on other grounds, either prior to or during trial.

The Appellate Division in *Ramos v. Browning Ferris Industries of South Jersey, Inc.*, 194 *N.J.Super.* 96, 106, 476 *A.*2d 304 (App.Div.1984), *rev'd on other grounds*, 103 *N.J.* 177, 510 *A.*2d 1152 (1986), and this Court in *Ramos, supra*, 103 *N.J.* at 181, 510 *A.*2d 1152, rejected an indemnification claim by the plaintiff's supplier of workplace equipment against its employer. Because the employer was immune from civil liability pursuant to the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –127, the Appellate Division held that it was not a "party" within the meaning of *N.J.S.A.* 2A:15–5.2. *Ramos, supra*, 194 *N.J.Super.* at 102, 106–07, 476 *A.*2d 304. This Court agreed, focusing upon the complete immunity afforded by the Workers' Compensation Act, which precludes any claim in Superior Court against the employer and "removes the employer from the operation of the Joint Tortfeasors Contribution Law." *Ramos, supra*, 103 *N.J.* at 184, 510 *A.*2d 1152. In *Ramos*, by virtue of the Workers' Compensation bar, no cause of action in tort against the employer ever arose. *See ibid.* Accordingly, no fault could be allocated to the employer pursuant to the Comparative Negligence Act and the Joint Tortfeasors Contribution Law. *Id.* at 184, 193–94, 510 *A.*2d 1152.

This Court reached a different conclusion when the defendant at issue was not protected by statutory immunity but was dismissed from the case by virtue of a settlement. In *Young v. Latta*, 123 *N.J.* 584, 585, 589 *A.*2d 1020 (1991), a medical malpractice "plaintiff settled before trial with one defendant-physician" and proceeded to trial against another. Although the non-settling defendant had not asserted a cross-claim for contribution against the settling defendant, the Court permitted him to seek an allocation of fault to the settling defendant, holding that "a non-settling defendant may seek a credit in every case in which there are multiple defendants, whether or not a cross-claim for contribution has been

filed." *Id.* at 596, 589 *A.*2d 1020.[7] The Court explained that, in the wake of a plaintiff's settlement with one defendant, whether or not a cross-claim for contribution has been filed, "a non-settling defendant's right to a credit [based upon an allocation of fault at trial] takes the place of contribution rights extinguished by the settlement." *Id.* at 595, 589 *A.*2d 1020. Although the *Young* Court did not expressly hold that the settling defendant constituted a "party" to the case within the meaning of *N.J.S.A.* 2A:15–5.2(a), the Court implicitly recognized "that a defendant who settles and is dismissed from the action remains a 'party' to the case for the purpose of determining the non-settling defendant's percentage of fault." *Brodsky, supra,* 181 *N.J.* at 113, 853 *A.*2d 940; *see also R.* 4:7–5(c); *Verni ex rel. Burstein v. Harry M. Stevens, Inc.,* 387 *N.J.Super.* 160, 205, 215, 903 *A.*2d 475 (App.Div. 2006) (reversing grant of motions for summary judgment filed by personal injury plaintiff on behalf of settling defendants in order to bar allocation of fault to settling defendants), *certif. denied,* 189 *N.J.* 429, 915 *A.*2d 1052 (2007); Pressler & Verniero, *Current N.J. Court Rules,* comment 2.2 on *R.* 4:7–5 (2013).

Thus, when a defendant ceases to participate in the case by virtue of a settlement, a non-settling defendant who meets the relevant requirements as to notice and proof may obtain an allocation of fault to the settling defendant. *See Young, supra,* 123 *N.J.* at 596–97, 589 *A.*2d 1020. The settling defendant does not pay any portion of the judgment; any percentage of fault allocated to the settling defendant operates as a credit to the benefit of the defendants who remain in the case. *Id.* at 595–96, 589 *A.*2d 1020; *accord R.* 4:7–5(c).

---

[7] In *Young,* the Court emphasized the importance of timely notice to a plaintiff and any remaining defendants when a non-settling defendant seeks to prove the fault of a settling codefendant. *Young, supra,* 123 *N.J.* at 597, 589 *A.*2d 1020; *see also Newman v. Isuzu Motors Am., Inc.,* 367 *N.J.Super.* 141, 153, 842 *A.*2d 255 (App.Div.2004) (concluding defendant waived right to seek apportionment of fault to settling plaintiff by failing to assert cross-claim or provide timely notice).

This Court's most recent exploration of the allocation issue arose from the bankruptcy of an uninsured driver alleged to have been partly responsible for the plaintiff's injuries in a motor vehicle accident. In *Brodsky, supra,* 181 *N.J.* at 116, 853 *A.*2d 940, the Court held that the jury should nonetheless assess the fault of the defendant driver, dismissed from the plaintiff's negligence action by virtue of his discharge in bankruptcy. The Court did not differentiate between a bankrupt defendant and a defendant who is judgment-proof by virtue of insolvency, and "decline[d] to carve out an exception in the case of a joint tortfeasor whose case is dismissed before trial because of a bankruptcy discharge." *Id.* at 115–16, 853 *A.*2d 940. We reasoned that the Comparative Negligence Act's provisions, tying a defendant's liability for the full measure of damages to the percentage of fault allocated to it, could not be fairly applied if the bankrupt defendant's fault were excluded from the jury's assessment:

> We hold that the trier of fact must determine the percentage of fault or negligence of a party dismissed from a negligence action following that party's discharge in bankruptcy. .. That conclusion assures that defendants are not deprived of the benefits of the Comparative Negligence Act, namely their right to be held accountable only for their percentage of fault, provided that portion is less than sixty percent.
>
> [*Id.* at 116, 853 *A.*2d 940 (citing *N.J.S.A.* 2A:15–5.3(c)).]

Under *Brodsky,* a defendant against whom plaintiff had a potential claim, but who was shielded by bankruptcy law from liability for that claim, was nonetheless held to be an essential component of the jury's assessment of fault under the Comparative Negligence Act. *Ibid.*

The Appellate Division has also considered the issue of apportionment in several settings. In *Bencivenga v. J.J.A.M.M., Inc.,* 258 *N.J.Super.* 399, 406–08, 609 *A.*2d 1299 (App.Div.), *certif. denied,* 130 *N.J.* 598, 617 *A.*2d 1220 (1992), the panel rejected a defendant's request for an instruction directing the jury to assess the fault of the unidentified individual who assaulted him on the defendant's premises and had been named as a fictitious defendant in the complaint pursuant to *Rule* 4:26–4. When an actual defendant is properly named in the case, however, statutory constraints

on the plaintiff's recovery against that defendant do not preclude apportionment. In *Johnson v. Mountainside Hospital,* 239 *N.J.Super.* 312, 319–20, 571 *A.*2d 318 (App.Div.), *certif. denied,* 122 *N.J.* 188, 584 *A.*2d 248 (1990), the Appellate Division stated that the jury was properly permitted to apportion fault to a hospital defendant, notwithstanding a statutory cap on the damages that could be assessed against that defendant under the Charitable Immunity Act, *N.J.S.A.* 2A:53A–8. In *Burt, supra,* 339 *N.J.Super.* at 305, 307, 771 *A.*2d 683, another panel held that, notwithstanding the dismissal of the plaintiff's medical malpractice complaint for failure to comply with the Affidavit of Merit statute, the dismissed defendant's potential negligence would be considered by the jury in its apportionment of fault. Finally, in *Bolz v. Bolz,* 400 *N.J.Super.* 154, 160–62, 946 *A.*2d 596 (App.Div.2008), the Appellate Division permitted apportionment of fault to a public employee entitled to immunity under the Tort Claims Act, *N.J.S.A.* 59:3–1(a), for injuries failing to meet the statutory criteria of *N.J.S.A.* 59:9–2(d).

From the governing statutes and our case law, we can derive several guiding principles. First, the Comparative Negligence Act and the Joint Tortfeasors Contribution Law promote "the distribution of loss 'in proportion to the respective faults of the parties causing that loss.'" *Brodsky, supra,* 181 *N.J.* at 114, 853 *A.*2d 940 (quoting *Blazovic v. Andrich,* 124 *N.J.* 90, 107, 590 *A.*2d 222 (1991)). Given the impact of a defendant's percentage of fault on the scope of its liability, the statutes' objectives are best served when the factfinder evaluates the fault of all potentially responsible parties. *Ibid.; Young, supra,* 123 *N.J.* at 594–95, 589 *A.*2d 1020; *Bolz, supra,* 400 *N.J.Super.* at 160–61, 946 *A.*2d 596; *Burt, supra,* 339 *N.J.Super.* at 306–07, 771 *A.*2d 683.

Second, our courts have barred apportionment where, as a matter of law, defendant could not under any circumstances be a joint tortfeasor under *N.J.S.A.* 2A:53A–2. *Brodsky, supra,* 181 *N.J.* at 115, 853 *A.*2d 940. Thus, in *Ramos,* an employer subject only to an action under the Workers' Compensation Act, and immunized from any action in tort, was not subject to apportion-

ment. *Ramos, supra*, 103 *N.J.* at 184, 510 *A.*2d 1152. Similarly, in *Bencivenga, supra*, 258 *N.J.Super.* at 406–07, 609 *A.*2d 1299, a fictitious defendant who had not been identified in an amended complaint or served with process was not subject to apportionment by a defendant at trial.

Third, apportionment of fault under the Comparative Negligence Act and the Joint Tortfeasors Contribution Law does not turn on whether the plaintiff is in a position to recover damages from the defendant at issue. Our courts have authorized a factfinder's assessment of the fault of a defendant from whom the plaintiff is barred from recovering damages by virtue of bankruptcy, *Brodsky, supra*, 181 *N.J.* at 116, 853 *A.*2d 940, from whom plaintiff cannot recover for failure to meet a statutory element for municipal liability, *Bolz, supra*, 400 *N.J.Super.* at 161–62, 946 *A.*2d 596, and from whom the plaintiff can collect only limited damages, *Johnson, supra*, 239 *N.J.Super.* at 319, 571 *A.*2d 318. Thus, statutory constraints on a plaintiff's ability to recover from a given defendant do not automatically preclude apportionment of fault to that defendant, notwithstanding the defendant's discharged liability.

Fourth, a claimant's failure to conform to a statutory requirement for asserting claims against a given defendant does not necessarily bar apportionment of that defendant's fault at trial. In *Burt, supra*, 339 *N.J.Super.* at 304, 771 *A.*2d 683, apportionment of fault to a physician defendant was permitted notwithstanding the plaintiff's failure to comply with the requirements of the Affidavit of Merit statute. Thus, in a case in which a plaintiff fails to meet a statutory requirement to file a claim against a particular defendant, our comparative fault statutes do not require that the remaining defendants be penalized when the factfinder allocates fault.

Applied here, these principles require that we affirm the Appellate Division's decision on the issue of apportionment. Allocation of fault to the dismissed defendants—who will, in any event, pay no damages—does not subvert the statute of repose's purpose to

give construction defendants "the right not to have to defend ancient claims or obligations." *Cyktor v. Aspen Manor Condo. Ass'n*, 359 *N.J.Super.* 459, 470, 820 *A.2d* 129 (App.Div.2003); *accord Russo Farms, supra,* 144 *N.J.* at 116, 675 *A.2d* 1077; *Trinity Church, supra,* 394 *N.J.Super.* at 175–76, 925 *A.2d* 720. The goals of our comparative fault statutory scheme are advanced if the jury assesses the SESI and Harrison–Hamnett defendants' potential fault in this case. Within the time constraints imposed by the statute of repose, *N.J.S.A.* 2A:14–1.1(a), the Town had the opportunity to assert a cause of action against the SESI and Harrison–Hamnett defendants during the ten-year statutory period.[8] The SESI and Harrison–Hamnett defendants, like the bankrupt defendant in *Brodsky,* were " 'not statutorily immune from a negligence suit at the time of the accident.' " *Brodsky, supra,* 181 *N.J.* at 115, 853 *A.2d* 940 (quoting *Brodsky v. Grinnell Haulers, Inc.,* 362 *N.J.Super.* 256, 277, 827 *A.2d* 1104 (App.Div.2003)). The jury's assessment of the SESI and Harrison–Hamnett defendants' fault promotes fair allocation of responsibility and avoids creating an incentive for a plaintiff to strategically target only one of a range of culpable defendants.

Accordingly, the Appellate Division properly reversed the trial court's pretrial and trial orders denying the Brandt–Kuybida defendants' applications for an allocation of fault to the SESI and Harrison–Hamnett defendants.

## VI.

We affirm the judgment of the Appellate Division. We remand the matter to the trial court for a new trial on the issue of liability,

---

[8] The Town's awareness of construction defects during the ten-year statute of repose period distinguishes this case from *Rosenberg.* There, the plaintiff's personal injury took place approximately thirty-three years after the road, that she alleged to have been negligently constructed, had been repaved. *Rosenberg, supra,* 61 *N.J.* at 193, 293 *A.2d* 662. Affirming the dismissal of the plaintiff's claim, this Court noted that by virtue of the statute of repose, no viable cause of action against the asphalt contractor defendant ever arose. *Id.* at 199, 293 *A.2d* 662.

including apportionment of fault to the Brandt–Kuybida, SESI and Harrison–Hamnett defendants.

*For affirmance and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned)—7.

*Opposed*—None.