**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5628-17T2

JACQUELYN FERENTZ,

    Plaintiff,

v.

MAYOR HERBERT FREDERICK,
individually and in his official
capacity, and THE BOROUGH
OF WEST WILDWOOD,

    Defendants.

_____

BOROUGH OF WEST WILDWOOD,

    Plaintiff-Appellant,

v.

MUNICIPAL EXCESS LIABILITY
JOINT INSURANCE FUND,

    Defendant-Respondent.

_____

Submitted July 8, 2019 - Decided July 15, 2019

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket Nos. L-0140-15 and L-0797-08.

Jacobs & Barbone, PA, attorneys for appellant (Louis M. Barbone, on the brief).

Methfessel & Werbel, attorneys for respondent (Eric L. Harrison, of counsel and on the brief; Adam N. Levitsky, on the brief).

PER CURIAM

In this liability insurance coverage case, plaintiff Borough of West Wildwood (Borough) filed a declaratory judgment against its insurer, defendant Municipal Excess Liability Joint Insurance Fund (Fund), seeking an order requiring the Fund to provide the Borough with a defense and indemnification in a pending action brought against the Borough by one of its employees under the New Jersey Conscientious Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. On appeal, the Borough challenges the Law Division's April 25, 2018 order granting summary judgment to the Fund and dismissing its complaint because the Borough deliberately breached the cooperation clause contained in its insurance policy. We affirm.

As a threshold matter, we note that the Borough's amended notice of appeal states that it is only appealing from the trial court's July 23, 2018 order denying its motion for reconsideration of the April 25, 2018 summary judgment

2

A-5628-17T2

order, rather than from the summary judgment order itself. "[O]nly the judgment or orders designated in the notice of appeal . . . are subject to the appeal process and review[.]" 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004). It is well established that "if the notice designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration motion that may be reviewed." Pressley & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1(e)(1) (2019) (citing W.H. Indus. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458-59 (App. Div. 2008)).

Thus, the April 25, 2018 summary judgment order is not properly before us on appeal. Nevertheless, because the Fund has not raised this jurisdictional issue or objected to our review of this order, we will consider the merits of the summary judgment motion.[1] W.H. Indus., 397 N.J. Super. at 459.

---

[1] The Borough's brief does not specifically address the July 23, 2018 order denying its motion for reconsideration. Thus, we deem this issue to have been abandoned. Grubb v. Borough of Hightstown, 353 N.J. Super. 333, 342 n.1 (App. Div. 2002) (explaining that an issue raised in a notice of appeal but not briefed is abandoned). In any event, we discern no basis for disturbing the trial court's denial of the Borough's motion for reconsideration, which essentially repeated the same arguments the court previously considered and rejected in granting the Fund's motion for summary judgment. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (citing D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)).

The material facts of this case are fully detailed in Judge James H. Pickering, Jr.'s comprehensive written decision granting the Fund's motion and, therefore, we recite only the most salient facts here. The Borough has a "commission form of government." as permitted under the Walsh Act, N.J.S.A. 40:70-1 to 40:76-27. The three members of its Board of Commissioners (Board) are elected to serve concurrent four-year terms. In turn, the commissioners elect one of the members as the Borough mayor.

From 1996 through June 2008, Christopher Fox served as the Borough mayor. Fox's brother worked as the Borough's chief of police during this same period. In addition, Jacquelyn Ferentz, who had lived with Fox for many years, and who has been described as Fox's "close personal friend, political ally[,] and supporter of the Fox administration[,]" was appointed as a police officer in 2000. She was later promoted to the rank of lieutenant, which was the next highest position under Fox's brother.

New commissioners were elected to the Board in 2008.[2] A majority of the Board members chose Herbert Frederick, a political opponent of Fox, as the new mayor. Frederick also served as the Director of Public Safety. Shortly thereafter, Fox's brother took an extended medical leave from the police

---

[2] Fox did not run for reelection in the 2008 election.

department and ultimately retired.  In the brother's absence, Ferentz assumed day-to-day responsibilities over the department.

Frederick attempted to reform the Borough government, including the police department.  Ferentz objected to these changes and, in July 2008, filed several complaints with county and State law enforcement agencies accusing Frederick of official misconduct.

In December 2008, Ferentz filed a CEPA complaint in the Law Division against the Borough and Frederick.  Among other things, Ferentz asserted that Frederick had retaliated against her by conducting an internal investigation of her conduct after she reported his alleged misconduct.

The Fund was the Borough's insurer for lawsuits like the one Ferentz filed. Its policy with the Borough included a standard cooperation clause, which in pertinent part stated:

> SECTION IV – CONDITIONS
>
> 4.  DUTIES IN THE EVENT OF POTENTIAL OR ACTUAL CLAIM
>
> c.  You and any other involved Insured must:
>
> . . . .
>
> (3)  Cooperate with us in the investigation, settlement or defense of the covered Claim, and not do

A-5628-17T2

anything that may prejudice the [Fund] or its potential or actual rights of recovery.

. . . .

(d)   You agree not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any claim without the [Fund's] written consent. The [Fund] shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

Trusting that the Borough would comply with the cooperation clause, the Fund undertook the defense of Ferentz's lawsuit on behalf of the Borough and Frederick.

In September 2009, Frederick completed his internal affairs investigation of Ferentz, and a notice of disciplinary action was filed against her. The notice charged Ferentz with a number of offenses, including making false statements regarding the training of a law enforcement officer; unauthorized use of the "Acting Chief of Police" and "Chief of Police" titles; and unauthorized absences from work. The Board engaged an independent hearing officer to conduct Ferentz's hearing and, over the next fourteen months, the hearing officer listened to ninety-one hours of testimony over twenty-three dates, and assembled a voluminous evidentiary record, which included 161 documents and 142 audio

6

recordings. In July 2011, the hearing officer rendered a sixty-three-page written decision sustaining most of the charges and recommending the termination of Ferentz's employment. After adopting the hearing officer's recommendation, the Board fired Ferentz in August 2011.

Ferentz responded by filing an action in lieu of prerogative writs in the Law Division challenging her removal. The Fund did not represent the Borough in that action because the lawsuit was not covered under the Borough's insurance policy.

In 2012, Fox and two of his political allies won all three seats on the Board and Fox once again assumed the position of Borough mayor. Once the Fox team returned to office, the Borough's new solicitor contacted the Fund's attorney in May 2012 to advise of the possibility that the newly elected Board members might dismiss all of the charges against Ferentz. In response, the Fund's attorney sent a letter to the solicitor reminding her that the Borough was required to cooperate with the Fund and was barred from taking any action in the disciplinary action against Ferentz that might prejudice the Fund's defense of the Borough regarding Ferentz's CEPA claims. The letter also warned the Borough that failing to consult with the Fund could result in the termination of coverage.

7

In spite of these warnings, the new Board members, with Fox abstaining, proceeded to pass a series of resolutions in June 2012 castigating the former Board members for taking disciplinary action against Ferentz, declaring her termination to be null and void, dismissing all of the disciplinary charges against her, reinstating her to the police department, and appointing her as the new chief of police.

The Borough provided no notice to the Fund prior to issuing these resolutions, did not consult with the Fund's attorney, and did not submit the resolutions for the Fund's review prior to their issuance. Nevertheless, the Fund did not disclaim coverage of the CEPA claim at that time. The Fund's attorney explained in his testimony that the Board had the authority to take these actions concerning Ferentz's employment because the CEPA and employment cases were two separate matters.

Certainly, the Board members' decision to restore Ferentz to her former position, and to make a number of derogatory comments against the prior members' actions, did not help the Fund's defense of the Borough against Ferentz's CEPA claim. That being said, the Fund would still be able to point to the fact that Frederick and the 2008-2012 Board had relied upon a comprehensive report prepared by an independent hearing officer, who

8

determined that the charges lodged against Ferentz were appropriate. Further, the Fund believed it could readily demonstrate at trial that the new Board members' decision to rescind Frederick's actions against Ferentz was itself politically motivated in an effort to reward Fox's housemate, long-term friend, and political ally by returning her to her former position. In short, so long as the Fund could continue to point to the fact that Frederick conducted an investigation that resulted in charges that were upheld by a hearing officer, the Fund believed it would still be able mount a viable defense against Ferentz's CEPA claim.

The Board members soon shattered that possibility. Without consulting with the Fund, the Borough entered into a "Negotiated Settlement and General Release" (Release) with Ferentz in October 2012. In the Release, Ferentz agreed to dismiss her prerogative writ action against the Borough in exchange for the Borough's agreement to reimburse her for back pay, and other benefits from the time she was out of work. The Release did not resolve Ferentz's pending CEPA claim and, in fact, it expressly stated that the resolution of the employment case "in no way affects [Ferentz's] ability to pursue her remedies" in the CEPA action.

Significantly, Paragraph 6 of the Release stated:

> As part of this Negotiated Settlement Agreement
> and General Release, [the Borough] agree[s] not to use

in any negative manner the disciplinary [action] which is, was or could have been the subject of this proceeding . . . against [Ferentz] in any other civil proceeding.

The only "civil proceeding" still pending between the Borough and Ferentz at that time was the CEPA case.

Thus, by agreeing to the Release, the Borough ensured that the Fund could no longer use any aspect of the disciplinary charges in defense of Ferentz's CEPA claim, and was now barred from referring at trial to: the hearing officer's decision; the testimony and exhibits from the disciplinary hearings; the testimony of Frederick; or anything else regarding the disciplinary action against Ferentz. In short, the Fund could no longer assert that Frederick and the 2008-2012 Board had a demonstrable, non-retaliatory, and legitimate basis for the disciplinary actions taken against Ferentz.

The Borough solicitor never advised the Fund's attorney of the Release. Instead, the Fund learned about it only after it made a document request in January 2013 for pertinent information under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13. Once it knew of the Board's actions, the Fund's attorney promptly advised the Borough that the Fund was disclaiming coverage because the Borough had violated the policy's cooperation clause by destroying the only viable defense the Borough had to the CEPA claim.

10

The Borough's solicitor executed a substitution of attorney and indicated that the Borough would not challenge the disclaimer of coverage if the Fund continued to defend Frederick. The Fund agreed to do so. However, Ferentz then voluntarily dismissed Frederick from the case. In March 2015, the Borough filed this declaratory action against the Fund seeking coverage under the policy for Ferentz's CEPA claim.

Before the declaratory action could be resolved, Ferentz's CEPA claim went to trial and, relying on the Release, the trial court permitted Ferentz to testify about her termination and the hardships she allegedly suffered before she was reinstated, and barred the Borough from asserting that the disciplinary action was justified based on the results of Frederick's investigation, and the independent hearing officer's report. Not surprisingly, the jury returned a verdict in favor of Ferentz, and the court later entered a judgment against the Borough in the amount of $1,766,687.40 for damages, counsel fees, and costs.

Following the verdict, Judge Pickering addressed the Borough's claim that it was entitled to indemnification and the costs of its defense under its insurance policy with the Fund. In a thorough and thoughtful thirty-six-page written decision, the judge rejected the Borough's legal arguments and found that it,

through the new Board members, had deliberately breached the policy's cooperation clause.

In so ruling, Judge Pickering carefully reviewed the governing case law, which provides that in order for a breach of a cooperation clause to provide a basis for disclaiming coverage, the "clause must be deliberately breached in a material or essential particular." Pearl Assur. Co. V. Watts, 58 N.J. Super. 483, 490 (App. Div. 1959) (emphasis omitted). That was clearly the case here. The Fund's attorney specifically directed the Borough's solicitor that the Fund had to be consulted before the Board took any actions that would vitiate any defense the Fund might use in the CEPA action. Judge Pickering found that the evidence clearly showed that "[d]espite that knowledge, [the Borough] forged ahead unilaterally to settle the disciplinary appeal without consulting [the Fund], and without consulting [the Fund] on the terms of the Release" the Borough accepted in Ferentz's prerogative writs action.

As Judge Pickering explained, once the Release was secretly agreed upon by Ferentz and the Borough, the Fund "was not able to present a defense that the suspension and termination [of Ferentz] was justified, made for good cause, or even in good faith. The municipality could not refer to the charges of the

disciplinary appeal, the evidence that supported those charges, and the Hearing Officer's decision."

Judge Pickering also rejected the Borough's contention that its breach was insignificant because by the time it negotiated the Release, it had already issued the resolutions criticizing Frederick's actions during his 2008-2012 term. The judge stated:

> [P]aragraph 6 of the Release bargained away a defense. The defense at issue is not what the [new Board members] concluded to be true in 2012 and thereafter [when they issued the resolutions supporting Ferentz and attacking the prior administration], but instead what Frederick believed to be true in 2009, 2010, and 2011. Evidence of Frederick's conduct, the hearings, and the findings of the Hearing Officer, all go to the issue of whether Frederick reasonably believed Ferentz had acted wrongfully. Paragraph 6 of the Release precluded that defense.

This appeal followed.

On appeal, the Borough raises the same arguments that Judge Pickering carefully considered and rejected in his cogent written opinion. It again claims that its unilateral decision to bargain away what was likely its only viable defense to Ferentz's CEPA claim "was an immaterial and inconsequential matter incapable of being a material and deliberate breach of the cooperation clause." The Borough also asserts that the new Board members were merely taking

corrective "governmental action" to remedy a wrong they believed Frederick had done to Fox's housemate, long-term friend, and close political ally.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as Judge Pickering did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

If, as here, there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Dickson v. Cmty. Bus Lines, 485 N.J. Super. 522, 534-35 (App. Div. 2019) (citing Prudential Prop. & Cas. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). We accord no deference to the trial judge's conclusions of law and review these issues de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). However, this court should affirm the judgment if it concludes that the trial court's conclusions of law were correct. Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 330 (2010).

We have considered the Borough's contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). We are satisfied that Judge Pickering properly granted summary judgment to the Fund, and affirm substantially for the reasons expressed in his April 25, 2018 written opinion.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15