589 A.2d 1020

STEVEN YOUNG, PLAINTIFF–APPELLANT, v. RICHARD S. LAT-
TA, D.O., DEFENDANT–RESPONDENT, AND CARMEN ALAM-
ENO, M.D.; BURDETTE TOMLIN MEMORIAL HOSPITAL, A
NEW JERSEY CORPORATION; JAMES MANLANDRO, D.O.;
AND ABC CORPORATION, SAID NAME ABC CORPORATION
BEING FICTITIOUS, DEFENDANTS.

Argued September 24, 1990—Decided May 14, 1991.

*Richard M. Altman* argued the cause for appellant (*Pelletti-eri, Rabstein and Altman,* attorneys; *E. Elizabeth Sweetser,* of counsel and on the briefs).

*Jay J. Blumberg* argued the cause for respondent (*George & Korin,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

In this medical-malpractice case plaintiff settled before trial with one defendant-physician. In rendering a verdict for plaintiff, the jury allocated the percentages of fault as between the non-settling tortfeasor (the only remaining defendant at trial) and the physician who had settled. Although the non-settler had not filed a cross-claim for contribution against the settling defendant, the trial court nevertheless gave the nonsettling tortfeasor the benefit of a credit against the judgment in view of the jury's finding that the settling defendant too had been at fault.

The question posed on this appeal is whether despite his failure to have sought contribution the non-settling tortfeasor is entitled to a credit reducing the amount of plaintiff's judgment against him to reflect the degree of fault that the jury allocated to the settling tortfeasor. The Appellate Division, one judge dissenting, upheld the trial court's ruling granting the non-settling defendant a credit against the judgment. 233 *N.J.Super.* 520, 559 *A.*2d 465 (1989). Plaintiff appeals as of right because of the dissent below. *R.* 2:2–1(a)(2).

We agree with the dissenting judge's conclusion that our Rules as currently drafted require that a non-settling defendant file a claim for contribution before the trier of fact can decide the fault of a settling defendant so that the court can calculate a credit in favor of the non-settler. However, because we are convinced that the procedural obligation now imposed by the Rules fails to take account of the practical problems inherent in litigating cases such as this, we conclude that our Rules should be amended to reflect the realities of the courtroom.

█ We hold that a credit is available in every case in which there are multiple defendants, whether or not a cross-claim for contribution has been filed. Because we are satisfied that plaintiff in this case had adequate notice that the settling defendant's negligence would be at issue, we conclude that plaintiff was not prejudiced by the trial court's ruling. We therefore affirm the judgment below. In addition, we refer this opinion to the Civil Practice Committee for the drafting of appropriate Rule amendments to accommodate our decision.

I

The undisputed facts are that on August 12, 1983, plaintiff, Steven Young, suffered injuries in a fall from the boardwalk at Wildwood. He was taken to the emergency room of Burdette Tomlin Memorial Hospital (Burdette Tomlin) where defendant Dr. Richard Latta examined him. After reviewing plaintiff's x-rays Dr. Latta called in defendant Dr. Carmen Alameno, the

general staff surgeon on duty. Dr. Alameno admitted plaintiff to the hospital and assumed the patient's care until his discharge on August 14, 1983. The following day plaintiff sought treatment at another hospital, where it was determined that he had suffered an injury to his right optic nerve. The injury eventually resulted in permanent blindness in plaintiff's right eye.

Plaintiff filed suit against Alameno and Burdette Tomlin, claiming that their negligence had caused the loss of sight in the damaged eye. Those defendants filed cross-claims against each other, seeking contribution and indemnification. Plaintiff subsequently amended his complaint to name as defendants Dr. Latta and Dr. James Manlandro, another physician at Burdette Tomlin. Alameno filed cross-claims for contribution and indemnification against Latta and Manlandro, but they did not respond in kind.

The trial court dismissed the suit against Manlandro by summary judgment. Plaintiff then settled with Alameno for $20,000, and also dismissed his claim against the hospital, leaving Latta as the only defendant at trial.

Immediately before the start of trial, and over plaintiff's objection, Latta obtained a ruling that would permit the jury to decide whether Alameno had been negligent and, if so, to apportion the degrees of negligence between them. At trial, plaintiff's expert testified, consistent with his written report, about the negligence of both Alameno and Latta. At the close of the evidence the trial court submitted special interrogatories to the jury regarding the liability of the two physicians. The jury determined that both had been at fault, Latta to the extent of twenty percent and Alameno (who, of course, had already settled with plaintiff) to the extent of eighty percent. The court molded the jury's verdict of $150,000 by entering judgment against Latta for $30,000. Thus, despite proving damages of $150,000 and the causative negligence of both physicians, plaintiff emerged from trial with a recovery of $50,000:

$20,000 from his settlement with Alameno and $30,000 from Latta.

Before the Appellate Division, plaintiff contended that because he had settled with Alameno, and because Latta had not asserted a cross-claim for contribution against Alameno, the trial court had erred in submitting the issue of Alameno's negligence to the jury. Plaintiff argued that Latta should be liable for the full amount of the damages or, at best, receive only a *pro tanto* credit for Alameno's settlement. A divided panel of the Appellate Division ruled in favor of Latta.

## II

Plaintiff argues that the allocation of fault among joint tortfeasors as provided for in the Comparative Negligence Act, see *N.J.S.A.* 2A:15–5.2, is not automatic; rather, it comes into play only when a defendant has asserted a claim for contribution. Of course, the availability of a credit to a non-settling tortfeasor would become moot were the factfinder foreclosed from determining the settling tortfeasor's percentage of fault, because that percentage determines the amount of the credit. In effect, plaintiff contends that the non-settler is not entitled to a credit unless he or she has preserved that remedy by means of a cross-claim for contribution. Consideration of that argument requires a brief review of the development of the contribution doctrine.

### –A–

Contribution among joint tortfeasors is a statutory device of relatively recent development. At common law the plaintiff alone controlled where the burden of fault would lie—that is, a plaintiff was free to choose which of multiple tortfeasors to sue and, having obtained judgment against several, from which among them to seek satisfaction of the judgment. The successful plaintiff also could control the proportion in which culpable tortfeasors would be responsible for payment: he or she could

collect all or any portion of the award from any judgment debtor with available assets.

Under common law a plaintiff's decisions regarding recovery of the judgment amount were not subject to adjustment, because the joint tortfeasors could not seek to allocate among themselves the burden of their fault. A defendant named in a tort action had no right to implead other suspected tortfeasors, nor did that defendant have a right to seek from fellow tortfeasors recoupment of payments in excess of his or her share of fault. *See, e.g., Malinauskas v. Public Serv. Interstate Transp. Co.*, 6 *N.J.* 269, 274, 78 *A.*2d 268 (1951); *Malkin v. Parsons*, 7 *N.J.Super.* 318, 70 *A.*2d 200 (Cty.Ct.1949). The rationale was that when several parties were at fault, the law would not aid one as against the other. *Pennsylvania Greyhound Lines v. Rosenthal*, 14 *N.J.* 372, 386, 102 *A.*2d 587 (1954).

In response to that theory, which "did violence to basic equitable notions that those whose fault caused the injury should, in good conscience, bear their just shares of the burden," *Kennedy v. Camp*, 14 *N.J.* 390, 400, 102 *A.*2d 595 (1954) (Jacobs, J., concurring), the Legislature in 1952 enacted the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 to –5. That enactment provided that if one of several joint tortfeasors paid the injured person more than his or her *pro rata* share of a judgment, that tortfeasor would be entitled to recover the excess from the remaining tortfeasors. See *N.J.S.A.* 2A:53A–3.

New Jersey's contribution statute, however, when compared to that suggested by the National Conference of Commissioners on Uniform State Laws (see Uniform Contribution Among Tortfeasors Act §§ 1–9, 12 *U.L.A.* 63 (1955)), provides little guidance on how courts should implement its remedies. Indeed, our statute has been described as one of those "of a rather simple kind [that] declare the right to contribution and leave most questions to the courts." *Id.* at 59 (Commissioners' Prefatory Note (1955 Revision)). In resolving those questions

we have sought to build on the statute's foundation, which is "the equitable principle of equality among those *in aequali jure*, a sharing of the common responsibility according to equity and natural justice." *Sattelberger v. Telep*, 14 *N.J.* 353, 367–68, 102 *A.*2d 577 (1954).

One of the first questions requiring this Court's attention was the effect of one defendant's settlement on the operation of the statute. Justice Brennan addressed that issue in *Judson v. Peoples Bank & Trust Company of Westfield*, 17 *N.J.* 67, 92–94, 110 *A.*2d 24 (1954), *aff'd on reconsideration*, 25 *N.J.* 17, 34, 134 *A.*2d 761 (1957), where he wrote that when one tortfeasor settles with the injured party for an amount that is less than the settler's *pro rata* share, equality among the wrongdoers may be achieved in one of two ways. The first option would have the court give the remaining tortfeasors a credit against the total verdict equivalent to the settler's *pro rata* share of the verdict. The second option would give the injured party a judgment for the total damage less the amount received in settlement, but permit any judgment tortfeasor who paid an amount in excess of his or her *pro rata* share to prosecute an action against the settler for contribution.

Although the latter alternative had been proposed in sections 4 and 5 of the original version of the uniform law, which was in effect at the time of *Judson*, Justice Brennan pointed out that its approach "may lead to some undesirable results." *Judson, supra*, 17 *N.J.* at 92, 110 *A.*2d 24. Besides allowing for collusive settlements, a mischief incident to the pre-statute prohibition against contribution that the new law was designed to end, permitting an action between the settling and non-settling tortfeasors would discourage compromise of contested actions and thereby violate the strong policy favoring settlement. *Id.* at 92–93, 110 *A.*2d 24.

The Court in *Judson* concluded that the Legislature's refusal to adopt sections 4 and 5 of the 1939 draft act "clearly indicated its preference for the first alternative," *id.* at 93, 110 *A.*2d 24,

namely, a credit based on the settler's *pro rata* share of the amount of the verdict. Conceding that "the statute contains nothing whatever expressly dealing with the effect of a settlement," the Court held nevertheless that allowing for a credit was indicated because it is "a logical incident of the created right of contribution and no provision expressly stating that effect was necessary." *Ibid.* Justice Brennan explained that "[t]he aim of the statute to make a settler responsible for his *pro rata* share is realized when the credit on the total damage is in the amount of that *pro rata* share, and provisions for a right of action against him at the hands of his co-tortfeasors were unnecessary." *Ibid.*

*Judson*, then, provides two principles important to our implementation of the Joint Tortfeasors Contribution Law: that a settling tortfeasor shall have no further liability to any party beyond that provided in the terms of settlement, and that a non-settling defendant's right to a credit reflecting the settler's fair share of the amount of the verdict—regardless of the actual settlement—represents the judicial implementation of the statutory right to contribution.

Decisions handed down after *Judson* have filled in the details. For example, this Court has held that a non-settling defendant does not get an increased credit if a settling tortfeasor pays more than his or her *pro rata* share of the liability. See *Theobald v. Angelos,* 44 *N.J.* 228, 208 *A.*2d 129 (1965). The Appellate Division has explained that the court should dismiss a non-settler's cross-claim for contribution as a matter of law as a result of the settlement, although the credit survives. *Tefft v. Tefft,* 192 *N.J.Super.* 561, 570, 471 *A.*2d 790 (1983). The non-settling defendant is not entitled to a credit if the plaintiff settles with a party found not to be a tortfeasor. *Rogers v. Spady,* 147 *N.J.Super.* 274, 277–78, 371 *A.*2d 285 (App.Div. 1977). We held in *Childs v. New Jersey Manufacturers Insurance Co.,* 108 *N.J.* 506, 531 *A.*2d 723 (1987), and *Riccio v. Prudential Property & Casualty Insurance Co.,* 108 *N.J.* 493,

531 *A*.2d 717 (1987), that settlements by insurance companies should be credited *pro tanto* rather than *pro rata* against an arbitrator's award in uninsured-motorist-coverage matters. None of those cases is inconsistent with the basic principles of *Judson.*

Nor have changes in the statutory scheme sapped the vitality of those principles. The *pro rata* contribution scheme of the Joint Tortfeasors Contribution Law has been eclipsed by the percentage-liability formula established by sections 5.2 and 5.3 of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.8. *Cartel Capital Corp. v. Fireco of New Jersey,* 81 *N.J.* 548, 569–70, 410 *A*.2d 674 (1980); *Rogers v. Spady, supra,* 147 *N.J.Super.* at 277, 371 *A*.2d 285. (The percentage-allocation provision of the Comparative Negligence Act applies to the defendants' contribution rights even if the plaintiff is found not to have been contributorily negligent. *Lee's Hawaiian Islanders, Inc. v. Safety First Prods.,* 195 *N.J.Super.* 493, 505, 480 *A*.2d 927 (App.Div.) (citing *Cartel Capital Corp., supra,* 81 *N.J.* at 569–70, 410 *A*.2d 674), *certif. denied,* 99 *N.J.* 205, 491 *A*.2d 703 (1984).) Pursuant to the Comparative Negligence Act, the finder of fact must make an allocation of causative fault between settling and non-settling defendants so that the court can calculate the amount of the credit due the non-settler even though the non-settler cannot pursue a claim for contribution against the settler. *Dimogerondakis v. Dimogerondakis,* 197 *N.J.Super.* 518, 485 *A*.2d 338 (Law Div.1984). Finally, although recent amendments to the Comparative Negligence Act have modified the rules of joint-and-several liability, see *L.* 1987, *c.* 325, § 2, contribution is still available to any party compelled to pay more than its percentage share. See *N.J.S.A.* 2A:15–5.3(e).

Throughout the evolution of New Jersey's contribution law, the guiding principles of *Judson* have remained constant. Whether available on a *pro rata* or percentage-of-fault basis, the right to a credit implements the protection of contribution when one defendant settles with the plaintiff. *Judson,* then,

stands for the proposition that whatever is necessary to make a claim for contribution is also necessary to preserve the right to seek a credit.

-B-

Although the Joint Tortfeasors Contribution Law makes no specific provision for enforcement, we have held that the Law announces a right to relief "enforceable by action" and that our Rules of Court provide the mechanism for vindication of that enactment's remedies. See *Sattelberger v. Telep, supra,* 14 *N.J.* at 365–66, 102 *A.*2d 577. Since *Sattelberger,* the Rules have contemplated the assertion of a right of contribution through a pleading. Our prior Rules addressed third-party procedure "[w]here the defendant in a tort action, by way of cross-claim asserts a right of contribution under the Joint Tortfeasors Contribution Act * * * against his co-defendants, or any of them * * *." *R.R.* 4:14–1(b). When that provision was deleted from that Rule in 1960, its substance was transferred to another Rule:

> A defendant in a tort action may assert a claim for contribution under the Joint Tortfeasors Contribution Act, *N.J.S.A.* 2A:53–A, against his codefendants, or any of them, by inserting in his answer * * * a general demand for contribution from them, naming them, without setting forth the fact upon which the claim is based.
>
> [*R.R.* 4:13–6(b).]

The Rule applicable today reads as follows:

> A defendant *shall assert* a claim for contribution or indemnity against any party to the action by inserting in his answer * * * a general demand for contribution from a named party * * *.
>
> [*R.* 4:7–5(b) (emphasis added).]

Paragraph (c) of *Rule* 4:7–5 directs that any defendant may assert a cross-claim as of right within ninety days of the date of service of the original complaint on that defendant or of service of the complaint on the party against whom the cross-claim is asserted. Thereafter, a defendant may assert a cross-claim only by leave of court. However, *Rule* 4:7–5 is subject to *Rule* 4:30A, the mandatory-joinder Rule, which requires that all

available claims, including cross-claims for contribution, must be filed in the main action on penalty of forfeiture under the entire-controversy doctrine. *See Wm. Blanchard Co. v. Beach Concrete Co.*, 150 *N.J.Super.* 277, 296, 375 *A.*2d 675 (App.Div.), *certif. denied*, 75 *N.J.* 528, 384 *A.*2d 507 (1977).

The majority below held that Latta need not have filed a cross-claim for contribution "because contribution is not in issue where one tortfeasor has settled and another has not." 233 *N.J.Super.* at 525, 559 *A.*2d 465. The court perceived that "[w]hat the non-settling defendant seeks is not contribution [ ] but a molding of the verdict to reflect his or her proportionate liability in keeping with the Comparative Negligence Act." *Ibid.* That is so, but it is only half the story. As our courts have interpreted the Comparative Negligence Act, the *only* reason for submitting to the finder of fact the question of the settling defendant's liability is to provide the basis for calculating the credit to which the non-settler is entitled. *Tefft, supra*, 192 *N.J.Super.* at 571, 471 *A.*2d 790.

Concededly, the adoption of the Comparative Negligence Act has "altered the relationship between joint tortfeasors." *Rogers, supra*, 147 *N.J.Super.* at 277, 371 *A.*2d 285. The Act's primary purpose, of course, was to abolish the harsh results frequently imposed by the doctrine of contributory negligence in favor of the more equitable rule of comparative negligence. *E.g., Suter v. San Angelo Foundry & Mach. Co.*, 81 *N.J.* 150, 161, 406 *A.*2d 140 (1979). It also provided a fairer method for allocating liability among tortfeasors, given the inequity of requiring a slightly-negligent tortfeasor to shoulder a disproportionate share of liability based on the happenstance of the number of tortfeasors. *Murray v. Nicol*, 224 *N.J.Super.* 303, 308, 540 *A.*2d 239 (App.Div.1988); *Lee's Hawaiian Islanders, Inc., supra*, 195 *N.J.Super.* at 505–06, 480 *A.*2d 927. Therefore, the Act's effect on contribution is to measure the remedy by percentage of responsibility rather than by the number of culpable parties. *Cartel Capital Corp., supra*, 81 *N.J.* at 569,

410 *A*.2d 674; *Rogers, supra,* 147 *N.J. Super.* at 277, 371 *A*.2d 285.

However, that the Comparative Negligence Act makes automatic a non-settling defendant's right to a credit does not follow inexorably. The majority below observed that section 5.2 of the Act requires the finder of fact to allocate liability among the tortfeasors and the court to mold the judgment from that finding of fact. 233 *N.J.Super.* at 523–24, 559 *A*.2d 465. Even so, section 5.3 provided (at the time of plaintiff's injury) that the claimant may recover the *full amount* of the molded judgment from any party except one whom the claimant is barred from pursuing. As *Judson* observed in respect of the Joint Tortfeasors Contribution Law, the Comparative Negligence Act does not address the effect of a settlement on contribution and makes no reference to a credit. The plain language of the Act indicates that a plaintiff may recover from the non-settling defendant the full amount of the judgment, and the Act's only provision for relieving a defendant so burdened is found in that party's right to seek contribution. See *N.J.S.A.* 2A:15–5.3. Our policy in favor of settlement is surely no less strong than it was in the days of *Judson.* In the event of a settlement the equities provided for in the right to contribution are transferred to the "logical incident," *Judson, supra,* 17 *N.J.* at 93, 110 *A*.2d 24, of the contribution doctrine, namely, the credit.

The Comparative Negligence Act, therefore, does not affect the holding of *Judson* that a non-settling defendant's right to a credit takes the place of contribution rights extinguished by the settlement. Neither can one find in that Act a shortcut around the provisions of our Rules that require that a defendant's right to contribution must be asserted by the filing of an appropriate pleading.

We conclude, then, that the statutory provisions for contribution, as interpreted in *Judson,* and our Rules of Court currently require that a non-settling tortfeasor pursuing a credit for the

percentage of liability attributed to a settling defendant must proceed by way of a cross-claim for contribution.

–C–

The question then becomes whether our law should continue to insist on that procedure. We think not.

A party's motivations for invoking a contribution claim and for seeking a credit are not necessarily the same. There may be strategic reasons for declining to prosecute a claim for contribution. For example, defendants in a like profession—in this case, physicians—may choose to defend charges of malpractice by denying that there was any negligence at all because finger-pointing among the defendants would accrue only to the benefit of the plaintiff. However, we can conceive of no case in which a non-settling co-defendant would not want a credit that reflects the causative fault of a defendant who had settled. Requiring a defendant to file up front a strategically-undesirable claim for contribution in order to preserve the right to a claim for a credit places that party between the well-known rock and hard place. That predicament is neither fair nor necessary. Therefore, we hold that a non-settling defendant may seek a credit in every case in which there are multiple defendants, whether or not a cross-claim for contribution has been filed.

Our ruling today does not render obsolete the cross-claim for contribution. The 1987 amendments to the Comparative Negligence Act provide, for example, that a plaintiff can recover the full amount of damages from any defendant found to have been at least sixty percent responsible for the injuries. See *N.J.S.A.* 2A:15–5.3(a). Joint-and-several liability continues to loom over defendants in environmental-tort actions. See *N.J.S.A.* 2A:15–5.3(d). The amendments preserve the right of contribution among joint tortfeasors, see *N.J.S.A.* 2A:15–5.3(e), and most defendants would find it prudent to preserve that right by means of an appropriate cross-claim.

As indicated above, our Rules as currently drafted do not reflect today's holding. Accordingly, we refer this opinion to the Civil Practice Committee for proposals for appropriate amendment of the Rules. The amendments should recognize the distinction between the inherent right to a credit available to multiple tortfeasors and their discretionary right to seek contribution via cross-claim.

The conclusion we reach today, as the Appellate Division cautioned, does not give a non-settling defendant free rein to assert the liability of a settling defendant without first providing the plaintiff with fair and timely notice. 233 *N.J.Super.* at 525, 559 *A.*2d 465. Our system of discovery is designed to make available information that is reasonably calculated to lead to relevant evidence concerning the respective positions of the parties. *R.* 4:10–2(a); *see Shanley & Fisher, P.C. v. Sisselman,* 215 *N.J.Super.* 200, 216, 521 *A.*2d 872 (App.Div.1987). A litigation strategy that features surprise to the adversary is no longer tolerated. *Lang v. Morgan's Home Equip. Corp.,* 6 *N.J.* 333, 338, 78 *A.*2d 705 (1951).

Thus, a plaintiff should know as early in the case as possible whether a defendant will seek to prove the fault of a co-defendant. Plaintiffs should conduct their discovery accordingly. Defendants are obliged to stake out positions among themselves by taking full advantage of the scope of the Rules, which allow for discovery from "any other party," whether or not a cross-claim for contribution has been filed. *See R.* 4:10–2(a). A defendant who produces no expert report (whether its own or that of another party) and fails to allege well before trial the causative fault of a co-defendant may be precluded from asserting at trial that co-defendant's fault in the event of a settlement. *See R.* 4:17–4(e), 4:23–5(b).

Although early and diligent pursuit of a non-settling tortfeasor's claim for credit seems to have obvious advantages, there may be tactical reasons, not readily apparent to us, why the non-settler would delay asserting that claim. We empha-

size that in this context trial courts should not countenance delay—that is, the court should not permit the non-settler to wait until the last minute before alerting the court and the plaintiff's lawyer that the settler's conduct will be at issue. Because tactics cannot be allowed to foil discovery, in the context of a claim for credit the court should enforce strictly the Rules setting forth the time prior to trial within which answer to interrogatories may be amended to set forth a settler's fault. See *Rule* 4:17–7.

### III

Despite our agreement with the dissent below about the current requirements of *Judson* and the Rules, our consideration of fair notice through discovery leads us to conclude that the result below should not be disturbed. Plaintiff argues that perhaps the most important advantage of requiring a cross-claim for contribution as a prerequisite to a credit is the notice it affords to parties that the settler's fault will be considered at trial. However, plaintiff was adequately alerted to Latta's intention to place in issue the comparative negligence of the two doctors. Initially, Latta's answers to interrogatories contained a denial of his negligence, asserting that any fault was that of Alameno. Certainly Latta's *in limine* motion seeking allocation of fault between himself and Alameno gave plaintiff notice that Latta intended to put Alameno's negligence in issue at trial. That the court would rule in favor of submitting Alameno's negligence to the jury could not have surprised plaintiff's counsel, who acknowledged before us his awareness that trial courts have gone both ways regarding the necessity of a cross-claim for contribution as a prerequisite for seeking a credit. Finally, Latta proved the negligence of Alameno on the basis of the testimony and written report of plaintiff's own expert.

The trial court could have handled Latta's *in limine* motion to place Alameno's negligence before the jury as a motion to

file a late cross-claim for contribution, which, pursuant to *Rule* 4:7–5(c), is to be "freely given." See *Ettin v. Ava Truck Leasing, Inc.*, 53 *N.J.* 463, 476–77, 251 *A.*2d 278 (1969). Even if promptly dismissed because of the settlement, the cross-claim would have served its perfunctory purpose.

## IV

Although settlement offers many advantages, some risks remain. *Theobald, supra,* 44 *N.J.* at 238, 208 *A.*2d 129. Because a settlement is made on the basis of a plaintiff's own appraisal of the prospects for recovery, that party cannot complain if the credit works to his or her disadvantage, because any reduction in a plaintiff's recovery is directly attributable to the acceptance of less than the settler's share of total recoverable damages. *See Judson, supra,* 17 *N.J.* at 93, 110 *A.*2d 24. Plaintiff admits Latta's failure to have filed a cross-claim for contribution against Alameno did not affect his settlement strategy. Therefore, plaintiff must bear the results of his evaluation of his potential recovery.

Affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.