SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Estate of Crystal Walcott Spill v. Jacob E. Markovitz, M.D.** (A-34-23) (088764)

**Argued September 23, 2024 -- Decided March 11, 2025**

**NORIEGA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a jury may allocate fault to an out-of-state alleged tortfeasor who is not subject to personal jurisdiction in New Jersey.

After the death of Crystal Walcott Spill, her estate and beneficiaries (plaintiffs) brought a wrongful death suit against doctors who treated her.  Spill was under the care of Jenny T. Diep, M.D., a rheumatologist based in New York.  Spill also received unrelated care from Jacob E. Markovitz, M.D., a gynecologist based in New Jersey.  Spill scheduled a surgical procedure with Dr. Markovitz for February 16, 2018.  Before the procedure, Spill had a routine appointment with Dr. Diep, and laboratory tests from that appointment revealed elevated creatinine levels and high blood pressure.  In response, Dr. Diep doubled Spill's daily dosage of a blood pressure medication and recommended that Spill see a nephrologist.

On February 15, 2018 -- one day before her scheduled surgical procedure -- Spill had an initial visit with Holly M. Koncicki, M.D., a nephrologist based in New York.  Dr. Koncicki performed additional laboratory tests but did not receive the results or have an opportunity to discuss those results with Dr. Diep before Spill's surgery.  During the procedure, Spill suffered a significant cardiac event.  She died later that day.  On February 17, 2018, Dr. Koncicki's records indicated that Spill's laboratory test results -- which revealed critically elevated creatinine and potassium levels -- had been available on the evening of her death.

Plaintiffs filed suit and named as defendants, among others, Dr. Steven Paganessi, the attending anesthesiologist for Spill's surgery, and his medical group (defendants).  Plaintiffs alleged that the doctors negligently proceeded with the surgery without waiting for the laboratory results from Dr. Koncicki.  Plaintiffs did not name Dr. Diep as a co-defendant and have never attempted to assert claims against her in this action or any other suit.  Defendants moved for an allocation of fault against Dr. Diep and filed a third-party complaint against Dr. Diep and her practice.

1

Dr. Diep moved to dismiss defendants' third-party complaint for lack of personal jurisdiction. The trial court granted Dr. Diep's motion and denied defendants' motion to include Dr. Diep on the verdict form, citing a lack of precedential authority to support defendants' theory that Dr. Diep -- a non-party alleged joint tortfeasor over whom the court did not have personal jurisdiction -- should be included on a verdict form for apportionment of fault. The Appellate Division affirmed, holding that an out-of-state individual over whom a New Jersey court does not have personal jurisdiction, such as Dr. Diep, is neither a party nor a tortfeasor, and there should not be an allocation as to such an individual. The Court granted leave to appeal. 257 N.J. 11 (2024).

**HELD:** An individual outside the reach of New Jersey's jurisdiction is not a party within the definition of the CNA for purposes of allocation. But that individual may be a joint tortfeasor for purposes of seeking contribution under the JTCL. The Court therefore affirms the judgment of the Appellate Division, as modified.

1. In civil actions, the Comparative Negligence Act (CNA) and the Joint Tortfeasors Contribution Law (JTCL), provide for allocations of fault against, or contributions from, individuals and entities. But the language of the CNA and the JTCL differs in important respects: the CNA allows allocation of fault during a trial only to a "party" or "parties," N.J.S.A. 2A:15-5.2(a), whereas the JTCL allows "joint tortfeasors" to seek contribution after a trial from other "persons" alleged to be "liable in tort for the same injury," N.J.S.A. 2A:53A-1, -3. (pp. 12-15)

2. Previous cases have considered whether allocation of fault is permissible when an alleged tortfeasor is absent, dismissed, or barred from the litigation in a variety of circumstances. In Ramos v. Browning Ferris Industries of South Jersey, Inc., for example, the Court concluded that the Workers' Compensation Act's immunization of the employer from negligence suits meant that "a third-party tortfeasor may not obtain contribution from an employer, no matter" the comparative negligence of each. 103 N.J. 177, 184 (1986). In other cases, New Jersey courts have found that it would be inequitable to preclude the allocation of fault -- even when the actual contribution was not possible -- because an omission by the plaintiff, whether inadvertent or strategic, deprived the defendant of the opportunity to bring third-party claims. Those cases show that courts have considered the reasons for which a potential defendant cannot be a "party" to the litigation under the CNA. In Young v. Latta, the Court determined that the CNA permitted a jury to allocate fault to a settling physician when the non-settling physician proceeded to trial in a medical malpractice lawsuit. 123 N.J. 584, 585-86 (1991). Although the language of the CNA itself did not provide for apportionment of fault to settling tortfeasors, the Court found that result to be a logical incident of the created right of contribution and no provision expressly stating that effect was necessary. Implicit in Young's construction of the CNA was the recognition that a defendant who settles and is

2

dismissed from the action remains a "party" for the purpose of determining the non-settling defendant's percentage of fault. Applying Young, the Appellate Division reached a similar conclusion in Kranz v. Schuss, in which the plaintiffs initiated two lawsuits seeking damages for the same harm, one in New Jersey and the other in New York. 447 N.J. Super. 168, 171-72 (App. Div. 2016). The plaintiffs settled with the New York defendants. The Appellate Division focused on the similarity between the two state claims and whether any actual prejudice resulted to the non-settling defendants. Finding none, the court held that the "equitable result is to permit defendants to have any judgment that plaintiffs may secure against them reduced by the amount of fault a jury attributes to the New York defendants." Id. at 181-82. (pp. 15-20)

3. Here, for lack of jurisdiction, Dr. Diep has never been and may never be a party to this case within the definition of the CNA. Although plaintiffs could have maintained an action against Dr. Diep in New York, they chose not to pursue that course. In other cases, the plaintiffs' litigation strategies caused the defendants' inability to pursue contribution from potential joint tortfeasors. But here, defendants are unable to make any such allegation. This matter is similarly devoid of any evidence of prejudice to the defendants. Defendants mistakenly rely on Kranz, focusing solely on the jurisdictional bar, while ignoring a critical factual difference: the existence of a settlement. In Kranz, as in Young, there was a settlement in place, whereas here, there is none between plaintiffs and Dr. Diep; a point of contrast between this case and Kranz that the Court finds dispositive. Dr. Diep, as a non-party alleged tortfeasor who is outside the jurisdictional arm of New Jersey courts, is not a "party" subject to allocation by the jury pursuant to the CNA. (pp. 20-22)

4. The same is not true, however, under the JTCL. Accordingly, if a judgment is rendered in this matter against defendants, they may pursue any available contribution claims in a jurisdiction relevant to any additional alleged tortfeasors. The Court takes no position on the merits of any such potential litigation. To the extent that the Appellate Division's decision found that Dr. Diep could not be a joint tortfeasor under the JTCL, the Court modifies that judgment. (pp. 22-23)

5. The Court also notes that it does not concur in the Appellate Division's conclusion that the model civil jury instruction on causation abates any unfairness that the lack of application of the CNA may impose on defendants. (p. 23)

**AFFIRMED AS MODIFIED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, and FASCIALE join in JUSTICE NORIEGA's opinion. JUSTICE PIERRE-LOUIS did not participate.**

3

Estate of Crystal Walcott Spill,
by Administrator ad Prosequendum
and General Administrator
David Spill, and David Spill,
individually, and Aria Spill, and
Colton Spill, surviving heirs
and wrongful death beneficiaries,
by their Guardian Ad Litem, David Spill,

Plaintiffs-Respondents,

v.

Jacob E. Markovitz, M.D.,
Englewood Women's Health,

Defendants,

and

Steven A. Paganessi, M.D., and
Anesthesia and Pain
Management Group,

Defendants-Appellants,

and

Hudson Crossing Surgery
Center, Amsurg Holdings, Inc.,
Envision Healthcare Corp.,
Hackensack Anesthesiology Associates,
PA, American Anesthesiology,
American Anesthesiology of

1

New Jersey, Mednax, Inc.,
Mednax Services, Inc., Holly M.
Koncicki, M.D., Mount Sinai
Health System, Mount Sinai Hospital,
Icahn School of Medicine at
Mount Sinai Hospital, Mount Sinai
Doctors, Mount Sinai Clinically
Integrated Network, Mount Sinai
Independent Practice Association,
Labcorp, Laboratory Corporation of
America Holdings, and Laboratory
Corporation of America,

Defendants.

Steven A. Paganessi, M.D.,
and Anesthesia and Pain
Management Group,

Third-Party Plaintiffs,

v.

Jenny T. Diep, M.D. and
Rheumatology Associates, P.C.,

Third-Party Defendants.

On appeal from the Superior Court,
Appellate Division.

Argued
September 23, 2024

Decided
March 11, 2025

Michael R. Ricciardulli argued the cause for appellants
(Ruprecht Hart Ricciardulli & Sherman, attorneys;
Michael R. Ricciardulli, of counsel and on the briefs, and
Matthew E. Blackman, on the briefs).

Dennis M. Donnelly argued the cause for respondents (The Donnelly Law Firm, attorneys; Dennis M. Donnelly, on the brief).

Christina Vassiliou Harvey argued the cause for amicus curiae New Jersey Association for Justice (Lomurro Munson, attorneys; Christina Vassiliou Harvey, of counsel and on the brief).

JUSTICE NORIEGA delivered the opinion of the Court.

In civil actions, the Comparative Negligence Act (CNA), N.J.S.A. 2A:15-5.1 to -5.8, and the Joint Tortfeasors Contribution Law (JTCL), N.J.S.A. 2A:53A-1 to -5, provide for allocations of fault against, or contributions from, individuals and entities; in some cases, these statutes provide for allocations against, or contributions from, individuals and entities who are not a part of the case when the jury renders its verdict. This medical malpractice action presents an issue of first impression: whether a jury may allocate fault to an out-of-state alleged tortfeasor who is not subject to personal jurisdiction in New Jersey.

In this case, after the death of Crystal Walcott Spill, her estate and beneficiaries (plaintiffs) brought a wrongful death suit against doctors who treated Spill. Defendants, Dr. Steven Paganessi and his medical practice, Anesthesia and Pain Management Group, moved for an allocation of fault

3

against Dr. Jenny Diep, an out-of-state doctor who treated Spill and whose actions they allege contributed to her death. The trial court found no precedent to permit such an allocation and denied defendants' motion seeking to include the out-of-state doctor on the verdict form. The Appellate Division agreed, holding that an out-of-state individual over whom a New Jersey court does not have personal jurisdiction, such as Dr. Diep, is neither a party nor a tortfeasor, and there should not be an allocation as to such an individual.

We agree with the Appellate Division's conclusion in part. An individual outside the reach of New Jersey's jurisdiction is not a party within the definition of the CNA for purposes of allocation. But that individual may be a joint tortfeasor for purposes of seeking contribution under the JTCL. We therefore affirm the judgment of the Appellate Division, as modified, and remand the matter to the trial court.

I.

A.

We rely on the following relevant facts, taken from the motion to dismiss record and the parties' briefing.

Plaintiffs allege that defendants negligently sedated and performed surgery on Spill without first sufficiently examining her medical history, thereby causing her death.

4

At the time of her surgery, Spill suffered from lupus and was under the care of Jenny T. Diep, M.D., a rheumatologist based in New York. Spill also received unrelated care from Jacob E. Markovitz, M.D., a gynecologist based in New Jersey. Dr. Markovitz recommended Spill undergo a colonoscopy and discovered in the results the presence of low-grade squamous intraepithelial lesions. He therefore suggested that Spill undergo a loop electrosurgical excision procedure (LEEP) to remove the abnormal tissue. Spill scheduled the LEEP for February 16, 2018.

Before the procedure, Spill had a routine appointment with Dr. Diep, which included laboratory testing. Laboratory tests revealed elevated creatinine levels and high blood pressure. In response, Dr. Diep doubled Spill's daily dosage of a blood pressure medication, Lisinopril, and recommended that Spill see a nephrologist.

On February 15, 2018 -- one day before her scheduled LEEP -- Spill had an initial visit with Holly M. Koncicki, M.D., a nephrologist based in New York. Dr. Koncicki performed additional laboratory tests but did not receive the results or have an opportunity to discuss those results with Dr. Diep before Spill's LEEP. Dr. Markovitz performed the LEEP on February 16, 2018, at Hudson Crossing Surgery Center; Steven A. Paganessi, M.D., was the attending anesthesiologist. During the procedure, Spill suffered a significant

5

cardiac event. The doctors intubated her, placed her on a ventilator, and transferred her to Englewood Women's Health, where she died later that day. On February 17, 2018, Dr. Koncicki's records indicated that Spill's laboratory test results -- which revealed critically elevated creatinine and potassium levels -- had been available on the evening of her death.

Plaintiffs filed suit and named as defendants, among others, Dr. Markovitz, Englewood Women's Health, Hudson Crossing Surgery Center, Dr. Paganessi, Anesthesia and Pain Management Group (APMG), and Dr. Koncicki.[1] They alleged that the doctors negligently proceeded with the LEEP without waiting for the laboratory results from Dr. Koncicki. Plaintiffs did not name Dr. Diep as a co-defendant and have never attempted to assert claims against her in this action or any other suit.

Dr. Paganessi and APMG (collectively, defendants) served an expert report from a rheumatologist, Edward Ewald, M.D., who opined that Dr. Diep was negligent in her care of Spill. The report alleged that the increased dosage of Lisinopril that Dr. Diep ordered was the most likely cause of Spill's increased potassium level, which caused her death. Plaintiffs moved to bar Dr. Ewald's testimony. Defendants cross-moved for an order permitting them to

---

[1] Shortly after the case was filed, the trial court granted Dr. Koncicki's unopposed motion for summary judgment and dismissed the claims against her with prejudice.

6

pursue an allocation of fault against Dr. Diep at trial. Defendants argued that the CNA and the JTCL permitted an allocation of fault to Dr. Diep. The trial court entered an order requiring defendants to file a third-party complaint naming Dr. Diep if they sought an allocation of responsibility or fault as to her. Defendants subsequently filed a third-party complaint against both Dr. Diep and her practice, as third-party defendants.

Dr. Diep moved to dismiss defendants' third-party complaint for lack of personal jurisdiction. Dr. Diep resided and practiced exclusively in New York. She had never treated or seen patients in New Jersey. Defendants filed a cross-motion seeking leave to pursue an allocation of fault against Dr. Diep at trial. No party disputed that New Jersey courts lacked jurisdiction over Dr. Diep.

Accordingly, the trial court granted Dr. Diep's motion to dismiss. The court denied defendants' cross-motion, citing a lack of precedential authority to support defendants' theory that Dr. Diep -- a non-party alleged joint tortfeasor over whom the court did not have personal jurisdiction -- should be included on a verdict form for apportionment of fault.

B.

The Appellate Division granted defendants' motion for leave to appeal[2] and ultimately affirmed the trial court's judgment.

The appellate court highlighted that the CNA's language explicitly requires that all persons and entities listed on the verdict form be parties to the suit. The court noted that, in contrast, the JTCL does not contain the word "party," but stressed that its definition of tortfeasors encompasses persons who could be "liable in tort" and who could have faced a "judgment" against them. Seeking to harmonize the CNA and the JTCL, the appellate court concluded that "our statutes are designed to enable the fair allocation of fault to the parties in the lawsuit, and generally to not apportion fault to non-parties." The court determined that no published opinion extended apportionment to a person beyond the state courts' jurisdiction and affirmed the decision of the motion judge. Lastly, the appellate court noted that the model jury instruction regarding proximate cause may cure some of the unfairness that defendants alleged by not being permitted to apportion fault to Dr. Diep on the verdict form.

---

[2] Co-defendants Dr. Markovitz and Englewood Women's Health joined in defendants' arguments before the Appellate Division but are not participating in this appeal.

8

## C.

We granted defendants' motion for leave to appeal. 257 N.J. 11 (2024). We also granted the motion of the New Jersey Association for Justice (NJAJ) to appear as amicus curiae.

## II.

## A.

Defendants Paganessi and APMG urge this Court to reverse the Appellate Division's judgment. They argue that the lack of jurisdiction over Dr. Diep should not deprive them of their right to the jury's apportionment of fault as to her responsibility for harm to plaintiffs. Defendants insist that Dr. Diep's absence from the verdict sheet will lead to an unjust imposition of liability because all responsible tortfeasors will not be included in the jury's apportionment of fault.

Additionally, defendants challenge the Appellate Division's determination that the model civil jury instructions on causation may abate any unfairness stemming from omitting Dr. Diep from the verdict sheet. Instead, defendants argue that the "substantial factor" test is not a substitute for allocation that may reduce plaintiffs' recovery but, where available, is a mechanism to avoid liability entirely.

B.

Citing N.J.S.A. 2A:15-5.2(a)(2), plaintiffs contend that the plain language of the CNA forbids apportionment of fault to Dr. Diep and maintain that there is no legislative principle or caselaw to support defendants' request. Moreover, plaintiffs argue that defendants' interpretation of the JTCL is misplaced, because the CNA is the only New Jersey statute addressing jury allocation of comparative fault percentages among multiple parties. Plaintiffs contend that defendants' allegation that Dr. Diep is at fault should be determined in a traditional contribution-after-judgment claim, rather than an "empty chair" defense and juror apportionment, which the CNA does not permit.

C.

NJAJ argues that the term "party" in the plain language of the CNA does not permit apportionment in this circumstance but that the JTCL provides defendants the right to seek contribution from a joint tortfeasor, in a separate action pursued in the proper jurisdiction, mitigating any unfairness to them. NJAJ further argues that the equities weigh in favor of precluding defendants from seeking apportionment for Dr. Diep because defendants would have the right to file a contribution action in New York upon the imposition of judgment in New Jersey.

10

III.

A.

All parties agree that the trial court lacked personal jurisdiction over Dr. Diep in this matter, and no party contests the dismissal of defendants' third-party complaint. The parties' only dispute pertains to the Appellate Division's affirmation of the trial court's legal determination that it did not possess the authority to permit the jury to allocate fault or negligence to an out-of-state non-party over whom New Jersey cannot assert personal jurisdiction. The case thus involves only questions of law.

Claims for contribution and allocation of fault to joint tortfeasors fall within the statutory schemes prescribed by the CNA and the JTCL. See Mejia v. Quest Diagnostics, Inc., 241 N.J. 360, 371 (2020). In construing a statute, our review is de novo. Maison v. N.J. Transit Corp., 245 N.J. 270, 286 (2021). "We therefore owe no deference to the interpretive analysis of either the trial court or Appellate Division, unless we are persuaded by the reasoning of those courts." Ibid. (quoting Est. of Narleski v. Gomes, 244 N.J. 199, 213 (2020)). When interpreting "statutes relating to the same subject matter, we must strive to harmonize them." Burt v. W. Jersey Health Sys., 339 N.J. Super. 296, 304 (App. Div. 2001) (citing In re Return of Weapons to J.W.D., 149 N.J. 108, 115 (1997)). Thus, "[s]tatutes in pari materia are to be construed together when

11

helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." J.W.D., 149 N.J. at 115 (quoting State v. Green, 62 N.J. 547, 554-55 (1973)). Statutory construction principles dictate that we determine the Legislature's intent by first considering the statute's plain language. Town of Kearny v. Brandt, 214 N.J. 76, 98 (2013).

We therefore turn to the language of the CNA and the JTCL.

### B.

"The [CNA] and the [JTCL] comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm." Id. at 96. Together, those statutes relieve the harshness of the former bar to recovery pursuant to the common-law principle of contributory negligence. See Glassman v. Friedel, 249 N.J. 199, 218-20 (2021). Under this framework, a plaintiff may recover even when adjudicated to be negligent to some degree, "if such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought." N.J.S.A 2A:15-5.1. With exceptions set forth in the statute, each tortfeasor will be responsible for only those damages attributed to their adjudicated percentage of fault. See Burt, 339 N.J. Super. at 304.

Under the CNA, all negligence actions "in which the question of liability is in dispute" require the trier of fact to make the following findings:

> (1) The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence or fault, that is, the full value of the injured party's damages.
>
> (2) The extent, in the form of a percentage, of each party's negligence or fault. The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all the parties to a suit shall be 100%.
>
> [N.J.S.A. 2A:15-5.2(a).]

Pursuant to subsection 5.2(a)(2), the factfinder may assess, allocate, or apportion negligence or fault to a party. Once an allocation has been made, N.J.S.A. 2A:15-5.3 governs how the recovery of damages may be allocated among the parties. If the factfinder assesses a negligent party's fault "at sixty percent or more, the plaintiff may recover the full amount of the awarded damages from that" party alone; if the factfinder allocates less than sixty percent of fault to that negligent party, "the plaintiff may recover from that [party] only the percentage of the damages assessed." Town of Kearny, 214 N.J. at 97 (citing N.J.S.A. 2A:15-5.3(c)). The statute makes no mention of non-parties. See Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 114 (2004) (quoting Blazovic v. Andrich, 124 N.J. 90, 107 (1991)) ("The guiding

13

principle of our State's comparative fault system has been the distribution of loss 'in proportion to the respective faults of the parties causing that loss.'").

The JTCL plays a complementary role to the CNA and "affords contribution rights to joint tortfeasors." Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 104 (2023). The statute defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1 (emphasis added).

Under the statute, when a person suffering an injury or damages recovers a money judgment from one or more tortfeasors, a joint tortfeasor who pays a judgment in whole or in part "shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share." N.J.S.A. 2A:53A-3. The JTCL "was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting [a] victim." Town of Kearny, 214 N.J. at 97 (quoting Holloway v. State, 125 N.J. 386, 400-01 (1991)). Our courts have previously held that "[t]he procedural status of a . . . joint tortfeasor . . . should not affect the substantive right of contribution." Mejia, 241 N.J. at 372-73 (quoting Holloway, 125 N.J. at 402). This Court's interpretation of the JTCL establishes that if a

14

> plaintiff chooses to sue only one joint tortfeasor and that joint tortfeasor is consequently compelled to bring his own contribution action against other tortfeasors, he should in the contribution action be both entitled to and burdened by the same contribution consequences which would have obtained had plaintiff himself sued both tortfeasors.
>
> [Ibid. (quoting Holloway, 125 N.J. at 402).]

The language of the CNA and the JTCL thus differs in important respects:  the CNA allows allocation of fault during a trial only to a "party" or "parties," N.J.S.A. 2A:15-5.2(a), whereas the JTCL allows "joint tortfeasors" to seek contribution after a trial from other "persons" alleged to be "liable in tort for the same injury," N.J.S.A. 2A:53A-1, -3.  We have stressed that application of the CNA and the JTCL should effectuate New Jersey's aim of apportioning damages fairly among plaintiffs, defendants, and joint tortfeasors.  See Jones v. Morey's Pier, Inc., 230 N.J. 142, 160 (2017) (quoting Holloway, 125 N.J. at 402).

## C.

Previous cases have considered legal questions not addressed within the four corners of the CNA and the JTCL.  Although we have never confronted the precise issue raised in this matter, both this Court and the Appellate Division have considered whether allocation of fault is permissible when an

15

alleged tortfeasor is absent, dismissed, or barred from the litigation in a variety of circumstances.

In Ramos v. Browning Ferris Industries of South Jersey, Inc., for example, this Court considered whether a third-party tortfeasor could seek recovery from an employer who had been dismissed from the case as immune to suit under the Workers' Compensation Act (WCA). 103 N.J. 177, 180-84 (1986). We concluded that the WCA's immunization of the employer from negligence suits essentially "remove[d] the employer from the operation of the [JTCL]" and that, as a result, "a third-party tortfeasor may not obtain contribution from an employer, no matter what may be the comparative negligence of the third party and the employer." Id. at 184. We further determined that the CNA did not "permit jurors to evaluate the percentage of negligence attributable to an absent employer" because New Jersey's statute is "restricted to parties to the action." Id. at 193-94. In other words, because no liability could attach to the employer under the WCA, the employer could not be a joint tortfeasor and was therefore "not subject to contribution liability under the [CNA]." Id. at 194.

In so holding, we recognized that imposing liability for the employee's injuries solely upon third-party tortfeasors may create "occasional inequities" but stressed that we "defer to the balance of interests as struck by the

16

Legislature" in developing the exclusive remedies of the WCA, even in light of the potentially competing interest behind the CNA and the JTCL. Id. at 184-88.

In other cases, New Jersey courts have found that it would be inequitable to preclude the allocation of fault -- even when the actual contribution was not possible -- because an omission by the plaintiff, whether inadvertent or strategic, deprived the defendant of the opportunity to bring third-party claims. See, e.g., Burt, 339 N.J. Super. at 301-02, 304-05 (holding that the remaining defendants were entitled to an allocation of fault against the defendants that were dismissed due to the plaintiff's failure to timely file the notice required by the Affidavit of Merit Act because to hold otherwise would "deny [the defendants] the protection afforded under the [CNA]" "through no fault of their own"); Town of Kearny, 214 N.J. at 82, 103-04 (holding that the remaining defendants were entitled to an allocation of fault against the defendants that were dismissed by virtue of the statute of repose because the plaintiff failed to timely sue the dismissed defendants and that such a result would "promote[] fair allocation of responsibility and avoid[] creating an incentive for a plaintiff to strategically target only one of a range of culpable defendants"); Morey's Pier, 230 N.J. at 148-50, 165 (allowing the defendants to pursue allocation against a public entity -- even though it was too late for

17

them to file a cross-claim against that entity under the Tort Claims Act --

because the plaintiffs caused the delay by first filing their action in an

improper forum and "the equities thus weigh[ed] against plaintiffs"). Those

cases show that courts have considered the reasons for which a potential

defendant cannot be a "party" to the litigation under the CNA.

Other cases have likewise turned on fact-specific determinations. In

Bencivenga v. J.J.A.M.M., Inc., for example, the Appellate Division rejected a

defendant's request for allocation of fault against a fictitious defendant

because, even though it is a plaintiff's responsibility under Rule 4:26-4 to

identify all defendants by name prior to the entry of judgment, the defendant

seeking allocation in that case was in the best position and had the best

opportunity to identify the unknown defendant but "chose to ignore that

knowledge and not identify him." 258 N.J. Super. 399, 406-10 (App. Div.

1992). By contrast, in Brodsky, we found that the jury should be permitted to

allocate fault to a defendant who had been dismissed from the case following a

discharge in bankruptcy. 181 N.J. at 115-16. We rejected the plaintiffs'

argument that the dismissed defendant was no longer a "party" to whom fault

could be allocated under the CNA because there was no basis to distinguish the

dismissed defendant from defendants in other cases that proved to be insolvent

after a verdict was handed in. Id. at 108, 115-16.

18

In Young v. Latta, this Court considered whether the CNA permitted a jury to allocate fault to a settling physician when the non-settling physician proceeded to trial in a medical malpractice lawsuit. 123 N.J. 584, 585-86 (1991). The case hinged on whether a cross-claim for contribution was a prerequisite to seeking a credit for the settled amount. We held that cross-claims should not be required for an allocation to a settling defendant as long as the non-settling defendant provides the plaintiff with fair and timely notice that it intends to assert the liability of the settling defendant. Id. at 596-97. Although we recognized that the language of the CNA itself did not provide for apportionment of fault to settling tortfeasors, "[w]e found that result to be 'a logical incident of the created right of contribution and no provision expressly stating that effect was necessary.'" Brodsky, 181 N.J. at 113 (quoting Young, 123 N.J. at 591). "Implicit in our construction of the [CNA] in Young was our recognition that a defendant who settles and is dismissed from the action remains a 'party' to the case for the purpose of determining the non-settling defendant's percentage of fault." Ibid.

Applying Young, the Appellate Division reached a similar conclusion in Kranz v. Schuss, 447 N.J. Super. 168 (App. Div. 2016). In Kranz, the plaintiffs initiated two medical malpractice lawsuits, one in New Jersey and the other in New York, seeking damages for the same harm. Id. at 171-72.

19

The plaintiffs settled with the New York defendants for $2 million, and the New Jersey defendants claimed they were entitled to a pro tanto credit in that amount against any judgment returned in favor of the plaintiffs. Id. at 173. The motion judge granted the credit. Id. at 171. The plaintiffs argued on appeal that the defendants should receive "a credit based only upon an allocation of fault to the New York defendants." Id. at 175. The Appellate Division agreed, finding the $2 million credit would constitute "an undeserved windfall for defendants." Id. at 181. The Appellate Division focused on the similarity between the two state claims and whether any actual prejudice resulted to the non-settling defendants. Finding none, the court concluded that the "equitable result is to permit defendants to have any judgment that plaintiffs may secure against them reduced by the amount of fault a jury attributes to the New York defendants." Id. at 181-82.

IV.

Against that backdrop, we consider whether permitting an allocation of fault against Dr. Diep -- a non-party alleged joint tortfeasor over whom the court does not have personal jurisdiction -- would be consistent with the CNA under the circumstances of this case.

Dr. Diep has never been and may never be a party to this case within the definition of the CNA. She is not subject to personal jurisdiction in this state;

20

she has no contacts to this state; and none of the underlying conduct in which she was involved is alleged to have occurred within this state. There are no circumstances in which a court in New Jersey could exercise jurisdiction over her on this record.

Next, Dr. Diep's exclusion from the lawsuit in New Jersey -- i.e., the reason she is a non-party -- is not the result of any act, or failure to act by plaintiffs. Although plaintiffs could have maintained an action against Dr. Diep in New York, they chose not to pursue that course. In other cases, the plaintiffs' litigation strategies caused the defendants' inability to pursue contribution from potential joint tortfeasors. But here, defendants are unable to make any such allegation. This matter is similarly devoid of any evidence of prejudice to the defendants.

Instead, defendants mistakenly rely on Kranz, focusing solely on the jurisdictional bar, while ignoring a critical factual difference: the existence of a settlement. In Kranz, as in Young, there was a settlement in place, whereas here, there is none between plaintiffs and Dr. Diep; a point of contrast between this case and Kranz that we find dispositive.[3]

---

[3] The Appellate Division in Kranz was confronted with the defendant's request for a $2 million pro tanto credit against any judgment the plaintiff might obtain. 447 N.J. Super. at 173. The appellate court rejected the defendant's public policy argument that the pro tanto credit permitted under

21

We therefore hold that Dr. Diep, as a non-party alleged tortfeasor who is outside the jurisdictional arm of our courts, is not a "party" subject to allocation by the jury pursuant to the CNA.

The same is not true, however, under the JTCL. Prohibiting apportionment of fault to Dr. Diep as a non-party is not inconsistent with defendants' allegation that she may be a joint tortfeasor. See Bencivenga, 258 N.J. Super. at 406-10. While the CNA only allows allocation of fault between a "party" or "parties" to a suit, N.J.S.A. 2A:15-5.2(a), the JTCL allows any "joint tortfeasor" to seek contribution from any other "persons" alleged to be "jointly or severally liable in tort for the same injury," N.J.S.A. 2A:53A-1, -3. Defendants allege that Dr. Diep is a joint tortfeasor. Accordingly, if a judgment is rendered in this matter against defendants, they may pursue any available contribution claims in a jurisdiction relevant to any additional alleged tortfeasors. Our decision today takes no position on the merits of any such potential litigation.[4]

New York law should apply equally in New Jersey, instead finding that the interplay between the CNA and JTCL was "evidence of New Jersey's public policy, and granting defendants a pro tanto credit is contrary to that policy." Id. at 177; compare N.Y. Gen. Oblig. Law § 15-108 (2025), with N.J.S.A. § 2A:53A-3.

[4] New York actions for contribution may be pursued pursuant to N.Y. C.P.L.R. § 1401-03, and the statute of limitations on any such action begins to

22

The judgment of the Appellate Division is affirmed. To the extent that the court's decision found that Dr. Diep could not be a joint tortfeasor under the JTCL, we modify that judgment and determine that she may be a joint tortfeasor for purposes of defendants' ability to seek contribution in an appropriate jurisdiction.

As a final matter, we note that we do not concur in the Appellate Division's conclusion that the model civil jury instruction on causation, specifically the substantial factor test, abates any unfairness that the lack of application of the CNA may impose on defendants. The substantial factor argument that defendants may raise at trial does not obviate the need for allocation of fault to reduce a plaintiff's recovery to the percentage of damages directly attributable to their own negligence, to the extent that the CNA permits such allocation.

V.

The judgment of the Appellate Division is affirmed, as modified.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, and FASCIALE join in JUSTICE NORIEGA's opinion. JUSTICE PIERRE-LOUIS did not participate.

---

run upon a judgment being entered against defendants, which has not yet occurred. Therefore, should defendants face any judgment in this matter, they are within their rights to seek contribution pursuant to New Jersey law, see Padula v. Lilarn Prop. Corp., 644 N.E.2d 1001, 1002 (N.Y. 1994), in a New York court with proper jurisdiction over Dr. Diep.

23